WILLIAM G. McADOO, Director General of Railroads, Operating the Pennsylvania Railroad Company,

*vs.*

STATE OF MARYLAND, For the Use of Theresa M. Kuntzman et al.

*Accident at Railroad Crossing—Negligence and Contributory Negligence—Evidence—Instructions.*

In an action for the death of one killed at a railroad crossing, a witness who is familiar with the crossing and its surroundings, and witnessed the accident, may describe the place of the accident and its surroundings, and state whether one approaching the crossing from the side from which deceased came could see an oncoming train. p. 460

In an action for the death of one in an automobile which was struck by a train at a crossing, *held* that the question of the negligence of defendant railroad company, and that of the contributory negligence of deceased, were for the jury, there being a conflict of evidence as to the condition of the signalling apparatus, the management of the safety gates, and the possibility of seeing the train from the automobile while it was approaching the track. p. 463

It was proper to instruct the jury that as a matter of law the negligence of the person operating the automobile in which deceased was riding cannot be imputed to the latter, and forms no bar to the right of recovery. p. 464

It was proper to instruct the jury that it was the duty of all the persons in the automobile to look and listen carefully for the approach of a train after the automobile started over the crossing, even though the watchman lifted the gate for them to cross; and that if the train could have been seen by the deceased in time to have warned the driver in time for the latter to have stopped before reaching the track on which the train was ap-

proaching, and did not do so or attempt to do so, the verdict must be for defendant.                                     p. 464

There being no evidence that the driver of the automobile was the agent or servant of the deceased, it was proper to refuse to qualify plaintiff's right of recovery by an instruction that if the jury find that the driver could have seen the train in time to stop the automobile before reaching the track, and they further find that the driver and deceased were employees of the owner of the automobile, and they were using it together for a common purpose in the furtherance of their employer's business, the verdict must be for the defendant.          p. 465

An instruction having been granted to the effect that the verdict must be for defendant, unless defendant's gateman was negligent in raising the gate and permitting the automobile to proceed over the crossing, and that to justify a finding that the gateman was so negligent, he must have done or omitted to do something which an ordinarily prudent man in his position would not have done or omitted to do, defendant could not complain of the refusal of an instruction that the verdict must be for defendant unless the jury find that the gateman was negligent, and that his negligence was the sole cause of the accident.                                     p. 465

*Decided June 16th, 1920.*

Appeal from the Court of Common Pleas of Baltimore City (STANTON, J.).

The plaintiff submitted the following prayers:

*Plaintiff's First Prayer.*—If the jury find from the evidence that Augustus A. Kuntzman was killed by a locomotive operated by the agent or agents of the defendant, and that said death resulted directly from the want of ordinary care or prudence of the said agent or agents of the defendant, or from the want of ordinary care or prudence of the gateman Hoeffer, and not from the want of ordinary care or prudence

on the part of Augustus A. Kuntzman directly contributing to the injury, then the plaintiff is entitled to recover. (*Granted.*)

*Plaintiff's Second Prayer.*—That if the jury find that the death of Augustus A. Kuntzman was caused by the negligence of the agent or agents of the defendant, and not from the want of ordinary care and prudence on the part of Augustus A. Kuntzman, directly contributing thereto, and further find that at the time of the accident referred to the said Kuntzman was not the owner, and did not control the automobile truck in which he was riding, and that he executed no control over the driving and management thereof, but that said automobile, if they so find, was being operated by another; that even if they find the said other person was guilty of negligence in the manner in which he managed and drove the said truck, which contributed to the happening of the accident, that, as a matter of law, the negligence of the said other person cannot be imputed to the deceased, Augustus A. Kuntzman, and forms no bar to the right of recovery of the plaintiff in this case against the defendant. (*Granted in connection with Defendant's Sixth Prayer.*)

*Plaintiff's Third Prayer.*—In order to defeat the recovery on the ground of contributory negligence on the part of Augustus A. Kuntzman, the defendant must satisfy the jury by preponderating evidence of two facts—first, that the plaintiff was negligent; secondly, that such negligence directly contributed to his death. (*Granted.*)

*Plaintiff's Fourth Prayer.*—That in considering the question of ordinary care and prudence on the part of the deceased, Augustus A. Kuntzman, the jury have a right to take into consideration, together with the other facts of the case, the known and ordinary disposition of men to guard themselves against danger. (*Granted.*)

*Plaintiff's Fifth Prayer.*—That if the jury should find a verdict for the plaintiff, they may, in estimating the damages to be allowed, consider what was the pecuniary loss which

the said Theresa N. Kuntzman, widow, has sustained by reason of the death of her said husband, and may consider the reasonable probabilities of the continuance of the joint lives of the said Theresa N. Kuntzman and Augustus A. Kuntzman but for his said death, and may allow her such damages as in their judgment would compensate her for such pecuniary loss as she has sustained, and reasonably will sustain, by reason of said death; and in estimating the damages which the minor children, Helen, Virginia and Albert Kuntzman, have sustained, they may consider what pecuniary loss they have sustained by reason of the death of their father, Augustus A. Kuntzman, the prospective damages to be estimated up to the majority of the said Helen, Virginia and Albert Kuntzman, and that the jury shall by their verdict find and direct what shall be the share of the said widow, and what shall be the shares of the said minor children of the amount of their verdict. (*Granted.*)

The defendant submitted the following prayers:

*Defendant's First Prayer.*—The defendant prays the Court to instruct the jury, as matter of law, that under the pleadings in this case there is no evidence legally sufficient from which they can find that the death of the deceased complained of in this case was caused by any negligence on the part of the gateman of the defendant, and therefore the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's Second Prayer.*—The defendant prays the Court to instruct the jury, as matter of law, that under the pleadings in this case there is no evidence legally sufficient from which they can find that the death of the deceased complained of in this case was caused by any negligence on the part of the defendant's agents, or agent, in charge of the locomotive and train of the defendant which struck or ran into the deceased in this case, and therefore their verdict must be for the defendant. (*Refused.*)

*Defendant's Third Prayer.*—The defendant prays the Court to instruct the jury, as matter of law, that under the

pleadings in this case there is no evidence legally sufficient from which they can find that the death of the deceased complained of in this case was caused solely by any wrongful act, neglect or default on the part of any agent or agents of the defendant, and therefore their verdict must be for the defendant. (*Refused.*)

*Defendant's Fourth Prayer.*—The defendant prays the Court to instruct the jury, as matter of law, that under the pleadings in this case and from the undisputed evidence in this case, the deceased so directly contributed by his own negligence to the happening of the accident complained of, resulting in his death, that there can be no recovery in this action, and the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's Fifth Prayer.*—The defendant prays the Court to instruct the jury, as matter of law, that under the pleadings in this case the deceased so far contributed to the accident, by his own negligence, resulting in his death, that there can be no recovery in this action, and the verdict must be for the defendant. (*Refused.*)

*Defendant's Sixth Prayer.*—The defendant prays the Court to instruct the jury that it was the duty of all the persons in the automobile mentioned in the evidence, to look and listen carefully for the approach of a train after the automobile started over the crossing, even although the jury may find that the watchman lifted the gate for them to cross; and if the jury find from the evidence that the train or locomotive which struck the automobile in which the deceased was riding could have been seen by the deceased in time to have warned the driver of the automobile of the train's approach in time for the said driver of the automobile to have stopped the automobile before reaching the track on which the train was approaching, and that the deceased did not do so or attempt to do so, then the verdict of the jury must be for the defendant. (*Granted.*)

*Defendant's Seventh Prayer.*—The defendant prays the Court to instruct the jury that if they find from the evidence that after the automobile started over the crossing and before it reached the track on which it was struck, the driver of said automobile could have seen the approaching train in time to have stopped the automobile before reaching the track on which the train aforesaid was approaching, and failed to do so, and if the jury further find from the evidence that there were two other persons in the automobile besides or in addition to the deceased, and that all three persons were employees of the owner of said automobile, and were using it together for a common purpose in the furtherance of their employer's business, then there can be no recovery in this action, and the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's Eighth Prayer.*—The defendant prays the Court to instruct the jury that their verdict must be for the defendant, unless they find from the evidence that there was negligence on the part of the gateman, and that that negligence was the sole cause of the accident complained of in this case, there being no evidence in this case legally sufficient from which they can find any negligence on the part of the engineman of the defendant's locomotive or those in charge of its train under the pleadings in this case. (*Refused.*)

*Defendant's Ninth Prayer.*—The Court instructs the jury, under the pleadings in this case, that their verdict must be for the defendant unless they find from the evidence that the defendant's gateman was guilty of negligence in raising the gate and permitting the automobile in which the deceased was to proceed over the crossing; and before the jury can find that the gateman was guilty of negligence in so doing, they must find that the gateman did or omitted to do something which an ordinarily prudent man in his position would not have done or omitted to do under all the circumstances that may be found by the jury from the evidence in this case. (*Granted.*)

The defendant filed special exceptions to the plaintiff's first, second and fifth prayers, on the ground of lack of evidence to justify them, which special exceptions were all overruled.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE and OFFUTT, JJ.

*Shirley Carter*, with whom were *Bernard Carter & Sons* on the brief, for the appellant.

*Clifton S. Brown,* with whom was *Milton Roberts* on the brief, for the appellees.

BRISCOE, J., delivered the opinion of the Court.

The declaration in this case alleges that on or about the 15th day of August, 1918, the equitable plaintiffs' husband and father, respectfully, was run into and killed by a locomotive belonging to and operated by the Pennsylvania Railroad Company, the defendant company, at the crossing made by the intersection of North Point Road, a public highway, and the defendant's railroad tracks; that at the time of the accident he was using due care, but through the negligence of the agent or agents of the defendant, the locomotive, belonging to and operated by the defendant company, ran into him and caused his death.

The bill of particulars, filed with the declaration, states that Augustus A. Kuntzman was killed on the 15th day of August, 1918, while riding on an automobile truck owned by John T. Lewis & Brothers Company, and operated by William T. Hoffstetter, Jr.

When the truck got to the crossing formed by the intersection of the North Point Road and the tracks of the Pennsylvania Railroad Company, the gateman, employed by the defendant company to warn persons crossing the defendant's

tracks, signalled William T. Hoffstetter, Jr., to proceed across, and while in the act of so doing a locomotive owned and operated by the defendant company ran into the truck and killed the said Augustus A. Kuntzman.

That there are surviving the said Augustus A. Kuntzman his widow, Theresa M. Kuntzman, thirty-seven years old; Helen Kuntzman, seventeen years old; Virginia Kuntzman, fifteen years old, and Albert Kuntzman, fourteen years old.

The verdict upon the trial in the Court of Common Pleas of Baltimore City was in favor of the plaintiffs for the sum of $18,500, and from a judgment on this verdict, distributed among the parties entitled, the defendant company has taken this appeal.

The questions for our consideration are presented upon two bills of exceptions reserved by the defendant company during the trial of the case on rulings of the Court upon the evidence and the prayers.

The plaintiff presented five prayers and all of them were granted. The defendant offered nine prayers and of these the sixth and ninth were granted and the others were refused. The defendant's special exception to the plaintiffs' prayers was overruled.

The first and only exception to the ruling of the Court upon testimony is set out in the first bill of exception and was taken to the following question asked the plaintiffs' witness Lober: "Now that train of cars in that position, was it possible for any one who was at the crossing of the North Point Road, on the south side of that crossing, where you have stated that these men were, by looking towards the city, to see an oncoming train, that is, a train coming towards them?"

The witness had been living for eight years in the vicinity of the crossing, and had passed over it daily on his way to his work. He was familiar with the locality and testified he was about a block away at the time of the accident, and in full view of the crossing and of the accident. He also testi-

fied that he heard the whistle of the passenger engine coming, which drew his attention to the crossing. He looked and saw that the automobile had stopped. The shifting engine was just coming out, and was going back, and as the shifting engine backed from the watchbox and cleared the crossing, the gateman raised the gates and the automobile started, and as the automobile got in one of the tracks, in the middle track, the second track, the passenger train hit it.

We find no error in the ruling embraced in this exception. The witness was familiar with the crossing and its surroundings, had witnessed the accident and was competent to describe the place of the accident and its surroundings. *United Railways* v. *Ward,* 113 Md. 649; *State* v. *B. & O. R. R. Co.,* 117 Md. 280; *Biggs* v. *M. & C. C. of Balto.,* 129 Md. 686.

This accident, which resulted in the death of Kuntzman and the two other men with him at the time in an automobile truck, occurred on the morning of August 15, 1918, at the crossing made by the intersection of North Point Road, a public highway of Baltimore County, and the railroad tracks of the Pennsylvania Railroad Company, on the main line between Philadelphia and Baltimore. The railroad tracks, where the accident occurred, run east and west at the crossing, and the North Point Road runs northwest and southeast across the tracks at the crossing. The men were on their way to work, and were proceeding in an automobile truck on the North Point Road, to cross the railroad tracks of the defendant company, at the crossing made by the intersection of the road and the tracks, and were struck by a passenger train coming from Baltimore. All three of the men were killed in the collision.

There were four witnesses examined on the part of the plaintiff.

The witness Geatty testified that he was engaged in the metal business and was employed by John T. Lewis & Brothers as superintendent, that the deceased Kuntzman had worked for him from December, 1916, to August 15th, 1918, and

was his chief machinist, and he paid him as such from $33 to $35 per week. The rate of wages at the present time for this class of labor, he stated, would be from forty-five to forty-eight dollars a week. The car was a Ford delivery truck, a touring car with a delivery body on it, and with an ordinary dayton top. It had but one seat, which was the driver's seat, and this would comfortably hold three persons; that William Hoffstater drove the truck, but was not the regular chauffeur, and the truck was used for the purpose of carrying the three men to their homes down on Middle River. He also testified that he visited the scene of the accident and saw the bodies of the three men lying near or alongside of the track.

Wm. H. Lober, who lived on the North Point Road, southeast of the crossing and worked at the B. & O. Railroad northwest of the crossing, testified that the three men passed him on the North Point Road, in the truck, about one or two blocks from where the accident occurred, and as he walked on toward the crossing he heard the whistle of the passenger engine coming from Baltimore and this drew his attention to the crossing. He looked and saw that the automobile had stopped. The shifting engine was coming out and going back, and as this shifting engine backed from the watch box and cleared the crossing, the gateman raised the gates and the automobile started, and when it got to the second track beyond the gates, it was struck by the passenger train coming from Baltimore and "everything went right up." That the shifting engine to which the train was attached had first gotten across the North Point Road when the gate was raised, and that it was not possible for any one who was at the south side crossing of the North Point Road, with the train of cars in the position it was, to have seen a train coming towards them from Baltimore. He also stated that he knew about this train coming from Baltimore every morning.

Martin Hoeffler, the gateman at the crossing, testified that he did not hear any whistle blown by the coming train, because he was shut up on account of the shifting engine, and

the train of cars attached to the shifting engine also shut him off from the view. The gate was down when the men drove up in the automobile, and he refused to raise the gate until he had looked, and could not see a train coming. He testified in answer to certain questions as follows: "Q. What kept you from seeing the train? A. It was foggy. So many smoke down there below, of the engines blowing smoke off, and trains coming off, and you could not see; the tower would not work right. What I say towers, the arms, it would not work. I made a report and I cannot understand that. When it should go that way it go that way (indicating), but it would not, the tower would not work right, and I made a report long before. Q. When they asked you to open the gate and you told them to wait a minute where did you go? A. I went right close to the track and looked over. Q. How many tracks did you go across? A. I went four tracks over, went four tracks, all the way over there, and the Philadelphia side was clear. What they call the Philadelphia side is the main track this side, it was clear, and I could not see nothing from that smoke, I could not see nothing to save your life. Q. And then you came back? A. I came back and he said, 'Hurry up,' and he said, 'Hurry up and open the gate,' and I opened the gate and it happened to him. Q. And you say that there were certain signals that you got of trains? A. Yes. Q. Did I understand you to say this signal was wrong? A. Yes, that signal was wrong, alongside of the watch box. Q. In other words, the signal showed you this train was not coming along A. Yes, the signal in that place instead of standing up stand that way (indicating)."

He testified upon re-cross-examination as follows: "(The Court): When you came back after you went over on the track and looked and you came back, did the man in the automobile, the three men in the automobile, say anything to you after you came back? (The Witness): Yes, he said open the gate. I see there only one man. (The Court): All right, only one man. (The Witness): I seen only one man. (The

Court) : What did he say ?   (The Witness) : He say open the gate, and I say all right.   It is clear.   I see nothing."

The testimony upon the part of the defendant company tended to show that the passenger train whistle was sounded for the crossing about 900 or 1,000 feet west of the crossing, at the usual whistle post, and that the engine bell was rung as the train approached the crossing.

The engineer on the train at the time of the accident testified as to how the accident happened.   He said : "Well, when the engine got about the whistle post I looked ahead and everything was apparently clear on my track, and the signal was all right for me to proceed—that is, the block signal—and then I took a general view of things, and I saw that shifting engine working over on what was the right side of my train.   As I got about that shifter, the shifter appeared to be backing towards Baltimore, and then everything appeared to be clear on the crossing, and I directed my attention to things further ahead.   About the time the locomotive got within say a car length of the crossing an automobile came up containing three men, and before I could close the throttle it was on the middle of the track and the engine struck it, and it looked to me as he was hit in the back of the man who was driving the machine, about the center of the automobile. Well, I immediately stopped and found out that it was a pretty serious accident occurred.   I had no warning, at the time I saw the machine come up to the right side of the cab, we both met on the crossing and there was nothing I could have done to have stopped the train before it hit the automobile."

There was also testimony by the defendant's witnesses to the effect that there was nothing to obstruct the view of those in the automobile of the approaching train between the gate and the track on which the automobile was struck.

Upon these and the other facts set out in the record we are of opinion that the questions of fact were proper for a jury to determine.   The evidence was conflicting as to the material facts, and the alleged negligence of the defendant company,

and the alleged contributory negligence of the deceased, were not questions of law for the Court, but of fact, to be determined by the jury before whom the case was tried upon proper instructions from the Court.

We come now to the law of the case as presented by the prayers, and are of opinion that the law was properly submitted by the plaintiffs' and the defendant's granted prayers. These prayers the Reporter will set out in his report of the case.

The plaintiffs' first, third, fourth and fifth prayers are the usual prayers in negligence cases like this and have been approved by this Court.

The plaintiffs' second prayer was granted in connection with the defendant's sixth prayer and was as follows: "That if the jury find that the death of Augustus A. Kuntzman was caused by the negligence of the agent or agents of the defendant, and not from the want of ordinary care and prudence on the part of Augustus A. Kuntzman, directly contributing thereto, and further find that at the time of the accident referred to the said Kuntzman was not the owner, and did not control the automobile truck in which he was riding, and that he executed no control over the driving and management thereof, but that said automobile, if they so find, was being operated by another; that even if they find the said other person was guilty of negligence in the manner in which he managed and drove the said truck, which contributed to the happening of the accident, that, as a matter of law, the negligence of the said other person cannot be imputed to the deceased, Augustus A. Kuntzman, and forms no bar to the right of recovery of the plaintiff in this case against the defendant."

The defendant's sixth prayer instructed the jury that it was the duty of all the persons in the automobile mentioned in the evidence, to look and listen carefully for the approach of a train after the automobile started over the crossing, even although the jury may find that the watchman lifted the gate for them to cross; and if the jury find from the evidence that

the train or locomotive which struck the automobile in which the deceased was riding could have been seen by the deceased in time to have warned the driver of the automobile of the train's approach in time for the said driver of the automobile to have stopped the automobile before reaching the track on which the train was approaching, and that the deceased did not do so or attempt to do so, then the verdict of the jury must be for the defendant."

These prayers correctly presented the law upon this branch of the case and the principle announced by them is supported by the recent cases of *United Rwys. & Elec. Co. v. Crain,* 123 Md. 332; *B. & O. R. R. Co. v. McCabe,* 133 Md. 219; *Washington, Baltimore and Annapolis Rwy. Co. v. State, use of Hall,* 136 Md. 103; *Northern C. Ry. Co. v. Gilmore,* 100 Md. 404.

The defendant's first, second, third, fourth and fifth prayers were demurrers to the evidence, and under the state of facts presented by the record could not have been granted.

The seventh prayer was properly refused. There was no evidence that the driver of the machine was the agent or servant of the plaintiffs' decedent, and hence, as was said in *Earp v. Phelps,* 120 Md. 282, there was no occasion to qualify the right of the plaintiffs' recovery in the way just indicated, since he would not be bound by the driver's negligence even if it had been established by the testimony. *B. & O. R. R. Co. v. Strunz,* 79 Md. 335; *United Rwys. Co. v. Biedler,* 98 Md. 564; *B. & O. R. R. v. Hendricks,* 104 Md. 76; *M. & C. C. of Balto. v. Biggs,* 132 Md. 113.

The theory of the defendant's eighth prayer was that the negligence of the gateman was the sole cause of the accident, whereas there was testimony on the part of the gateman that the signal showed that no train was coming, that the tower or the arms would not work, and these defects had been reported to the company. The defendant, however, was not injured by the rejection of this prayer, because the same proposition was presented in its ninth granted prayer, which instructed the jury that, under the pleadings in the case, their

verdict must be for the defendant, unless they find from the evidence that the defendant's gateman was guilty of negligence in raising the gate and permitting the automobile in which the deceased was to proceed over the crossing and before the jury can find that the gateman was guilty of negligence in so doing, they must find that the gateman did or omitted to do something which an ordinarily prudent man in his position would not have done or omitted to do under all the circumstances that may be found by the jury from the evidence in this case.

We find no error in the rulings of the Court upon the special exceptions to the plaintiffs' prayers, and they were properly overruled. As we find no reversible error, in any of the rulings of the Court, the judgment must be affirmed.

*Judgment affirmed, with costs.*