WILLIAM W. GAVIN *v.* J. EMORY TINKLER
[No. 33, April Term, 1936.]

*Decided May 20th, 1936.*

The cause was argued before BOND, C. J., URNER, OF-
FUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHN-
SON, JJ.

*Frederick W. C. Webb,* with whom were *Woodcock,*
*Webb, Bounds & Travers* on the brief, for the appellant.

*L. Claude Bailey* and *Avrum K. Rifman,* with whom
were *Miles, Bailey & Williams,* and *Johnson & Johnson,*
on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The personal injuries on account of which the plaintiff
obtained a judgment, on the verdict of a jury, were suf-
fered in consequence of a collision which occurred at

night when the driver of a motor truck, who was accompanied by the plaintiff, attempted to pass the defendant's truck from the rear. The principal questions raised at the trial were whether there was legally sufficient evidence of primary negligence on the part of the defendant's truck driver, and whether contributory negligence of the plaintiff was conclusively proved.

When the accident happened, the two trucks involved in it were proceeding northwardly on the Reisterstown Road through the village of Delight. The roadway is of concrete and forty feet wide. It is divided by painted lines into four traffic lanes of equal width, two for northbound, and two for southbound, traffic. The central line is white, and the parallel lines to the east and west of the center are yellow. At the village of Delight the Reisterstown Road is intersected by another highway. It was testified by the driver of the defendant's truck that, as he approached the intersection, he drove from the outer into the inner northbound traffic lane, with a view to the possible necessity of making a turn to the west at that point. Having found, when he reached the intersection, that it was not the proper place for him to make such a deviation, he was proceeding, as he said, to return to the outer traffic lane, when the rear of his truck received a heavy impact. According to his testimony, he heard no warning signal from the colliding truck, and its approach was not reflected in his rear-vision mirror, and he did not know what caused the collision until he got out of his truck and went back to investigate.

The other truck was driven by Elias W. Fowble, a storekeeper and trucker, who was returning from the delivery of a load of peas in Baltimore, and who had invited the plaintiff to accompany him on the trip. Mr. Fowble was fatally injured in the accident. From the plaintiff's testimony in chief we quote the following:

"As you are going north on this road before you get to the Delight Road you come to the top of a hill. The crest of that hill is four hundred feet from the Delight Road.

I first saw the Gavin (defendant's) truck just at the top of that hill. * * *

"Q. When you reached the crest of that hill and saw the Gavin truck ahead of you, how far ahead of you was the Gavin truck? A. I judge about forty feet.

"Q. Which lane was the Gavin truck traveling in at that time? A. In the righthand lane.

"Q. For northbound traffic? A. Yes, sir.

"Q. Which lane was Mr. Fowble traveling in at that time? A. In practically the same lane of traffic. * * *

"Q. How fast was he driving? A. I could not say. I did not look at the speedometer; he had not drove over twenty miles. * * *

"Q. When you came to the crest of the hill and started down grade towards the Delight Road tell the jury just what you observed as to the operation of the two trucks? A. When we approached the intersection there where the lines end on the road for the Delight Road to make the turn, Mr. Fowble was driving the truck of course—after they had crossed over that he blowed his horn and pulled to the left to go around and at that time, the other truck made a left turn and Mr. Fowble turned to the right so he would avoid the accident to go on the right. That is as far as I know."

The Gavin truck, as the plaintiff testified, was then beyond the intersection. His testimony then continued in part:

"Q. Tell us again what Mr. Gavin's truck did after Mr. Fowble blew and pulled to the left. A. He turned left as if he was going to make a left-hand turn in the road.

"Q. What signal, if any, did the driver of Mr. Gavin's truck give? A. None at all.

"Q. What did Mr. Fowble do after the Gavin truck turned to the left? A. He put on his brakes and turned to the right.

"Q. Then what happened? A. Then the impact.

"Do you remember anything else? A. No, sir.

"Q. When do you next remember anything. A. In the hospital."

On cross-examination the plaintiff was questioned as to previous statements by him to the effect that before the defendant's truck made a definite turn to the left it was bearing to the left across the yellow line between the two northbound traffic lanes, and as to his divergent estimates of the distance at which the defendant's truck first came within his observation. In the course of his cross-examination the plaintiff testified that, after the Gavin truck had reached the farther side of the intersection, he and Mr. Fowble both remarked that it would not make a left turn there, and that consequently they could pass it in safety, and further testified that the front of the Fowble truck had come abreast of the rear end of the Gavin truck when the latter made the turning movement to the left which caused Mr. Fowble to swerve his car to the right in the unsuccessful effort to avoid the collision.

If the accident occurred as described by the plaintiff in his testimony, it was unquestionably attributable to negligence on the part of the defendant's truck driver. According to that testimony, he attempted to turn the truck to the left without giving a signal to traffic in the rear as required by the Motor Vehicle Law (Code, art. 56, sec. 209, as amended by Laws of 1929, ch. 224), and although a warning, in obedience to that act, had been given by the driver of the truck behind of his intention to pass. But it has been argued for the defendant that the testimony of the plaintiff as to the circumstances of the accident is too confused and contradictory to be accepted in support of the charge that the defendant's truck driver was negligent. With that view we are unable to agree. The variations in the plaintiff's statements as to distances and other details were not, in our opinion, sufficiently material to destroy the probative force of his testimony upon the essential issues of fact. *Porter v. Greenbrier Quarry Co.*, 161 Md. 34, 155 A. 428.

It is also contended that the plaintiff's version of the accident is conclusively disproved by the actual location and condition of the two trucks immediately after it occurred. There was evidence tending to prove that the

left front part of the Fowble truck collided with the right rear corner of the truck owned by the defendant, which was pointed slightly northeast after the collision, while the other truck was about parallel with the yellow division line across which both trucks partly extended. The physical conditions thus proved do not appear to have been clearly incompatible with the truth of the plaintiff's narrative. Whether it should be accepted in preference to the opposing statement of the defendant's truck driver was a proper question for the jury to determine.

A further contention is that the plaintiff should be conclusively adjudged guilty of contributory negligence upon the theory that the attempt to pass the defendant's truck was made at a road intersection in violation of the provisions of the Code article and section already cited. That theory is not sustainable, in view of testimony that the point of the collision was twenty-two feet beyond the intersection and that Mr. Fowble gave a signal and made an effort to pass the truck ahead after the intersection had been crossed. Therefore, assuming that the plaintiff, because of his discussion with Mr. Fowble of the proposed passing movement, would, as argued, be chargeable with negligence if the effort to pass had been made while the defendant's truck was crossing the intersection, we could not hold that an attempt to pass at that time and place had been proved beyond question.

The demurrer prayers relating to the issues of primary and contributory negligence were properly refused.

There was an objection to the granting of the plaintiff's first prayer, which instructed the jury that, if they should find from the evidence that the "collision was due to the want of ordinary care and prudence on the part of the driver of the defendant in operating his said truck," and should "further find from the evidence in this case that the plaintiff was riding in the auto truck, owned, controlled and operated by the said Elias W. Fowble, and that the plaintiff exercised no control over the operation and management of the same, and that at

said time the plaintiff was exercising due care and caution, and shall further find that the said Elias W. Fowble was guilty of negligence in the operation and control of said auto truck which contributed to the accident, then as a matter of law the negligence of the said Elias W. Fowble cannot be imputed to the plaintiff and forms no bar to the right of recovery of the plaintiff in this case." The form of such an instruction has been approved by this court (*McAdoo v. State*, 136 Md. 452, 111 A. 476), and it is not subject to the argued criticism that it improperly segregated facts involved in its hypotheses. In exempting the plaintiff from responsibility for any negligence on the part of his companion, while making his own exercise of ordinary care a condition of his recovery, the prayer gave due recognition to a well-settled principle. *State, use of Shipley v. Lupton*, 163 Md. 180, 161 A. 393; *Montgomery Bus Lines v. Diehl*, 158 Md. 233, 148 A. 453; *Yellow Cab Co. v. Lacy*, 165 Md. 588, 170 A. 190; *Baltimore & Ohio R. Co. v. State, use of Carbone*, 169 Md. 343, 181 A. 830.

The defendant complains of the rejection of his seventh prayer, but the proposition of law stated in it was fully and clearly expressed in his tenth prayer, which was granted.

The only other ruling discussed in the appellant's brief allowed an inquiry of the defendant, on cross-examination, as to how many trucks he operated at the time of the accident in 1933. His answer was that he then operated five. To the next question, "How many now?" (1935), an objection was sustained. The permitted inquiry, which followed a statement by the defendant that he sent another truck to the scene of the accident, appears to have been irrelevant, but the answer was not of sufficient importance to require a reversal on the ground of harmful error in the ruling.

*Judgment affirmed, with costs.*