## MELVILLE v. STATE OF MARYLAND to Use of MORRIS et al.

### No. 5476.

Circuit Court of Appeals, Fourth Circuit.

May. 13, 1946.

Frederick W. C. Webb, of Salisbury, Md. (Woodcock, Webb, Bounds & Travers, of Salisbury, Md., on the brief), for appellant.

Frank C. Wachter and Hilary W. Gans, both of Baltimore, Md. (Thomas F. Johnson, of Baltimore, Md., on the brief), for appellees.

Before GRONER, Chief Justice of the United States Court of Appeals for the District of Columbia, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This case arose out of a tragic collision between a motor truck owned by James

Melville and a tractor-trailer truck owned by the Acme Poultry Corporation. On each of these trucks were two men and all four of them were killed. There were no eye-witnesses to the accident. A civil action against Melville, removed from a state court to the United States District Court for the District of Maryland and tried with a jury, brought on account of the death of John Morris (an occupant of the Acme truck), resulted in a verdict and judgment against Melville for $18,000, from which he has duly appealed.

The collision occurred shortly after midnight January 26, 1945, between the towns of Snow Hill and Berlin, in Maryland, on State Highway Route 113. This road, at the scene of the accident, consists of 16 feet of macadam, with a line in the center, and dirt shoulders about 4 feet wide on both sides of the macadam. Here the road curves to the west, and the collision occurred within, but near the northern end of, the curve. The center, or crown of the road, was somewhat higher than the sides. The southbound Melville truck was a single, ten-wheel vehicle. The northbound Acme truck was a combination tractor-trailer, with a combined length of about 34 feet, a width of 8 feet, a height of about 10 feet and a weight of about 6 tons.

 We first consider what seems to be the most important contention of appellant, the one most seriously urged in the brief and oral argument. Appellant insists that here, in the absence of any eye-witnesses to the accident, there was not evidence sufficient to submit the question of appellant's negligence to the jury so that the trial judge should have given a peremptory instruction to the jury to find in favor of the appellant. We cannot agree with this contention, though the question it presents is a close one.

It is conceded that we must here follow the law of Maryland. Great stress is laid by appellant on Maryland cases which seem to minimize the probative effect of the position of the trucks after the collision. Shafer v. State, for Use of Sundergill, 171 Md. 506, 189 A. 273; State, for Use of Balderston v. Hopkins, 173 Md. 321, 196 A. 91; Gloyd v. Wills, 180 Md. 161, 23 A.2d 665; Finney v. Frevel, 183 Md. 355, 37 A.2d 923.

See, also, Doggett v. Peek, 5 Cir., 116 F.2d 273. We think appellant over-emphasizes the effect of these cases in his favor. In none of these cases were the facts quite similar to the facts in the instant case, where the complete absence of skid-marks, and all the surrounding circumstances tend to show pretty clearly that there was little or no movement of the trucks after the collision.

The trucks after the collision formed a rough V, with the point of the V toward the West. The left rear-wheel of the Melville truck was at (or just off) the eastern edge of macadam, the front was facing Southwest, with a small part of the truck in the western lane of the road and the much larger portion of the truck in the eastern lane. The tractor of the Acme truck was almost entirely in the western lane facing a few degrees West of North, while the trailer was for the most part in the eastern lane, facing slightly East of North. The damage to the Melville truck was right on its front; the damage to the Acme tractor-trailer was largely on its right side near the front of the tractor. Clearly, then, the impact and force of the collision must have been from East to West. This is further indicated by evidence as to the location of the debris within the V.

In the light of all the evidence, particularly that as to the position of the trucks plus the evidence of Davis (discussed later in this opinion) as to the course and speed of the Melville truck a few seconds before the collision, the most plausible and probable theory of the accident (which formed the basis of the jury's verdict) would be this: the southbound Melville truck was largely or wholly in the eastern (improper as to it) lane, while the northbound Acme truck was also in the eastern (proper as to it) lane. The Acme driver, seeing an inevitable collision if he continued his course, and faced with the alternative of driving off the road to the right or turning to the West, which was his left, tried the latter procedure. The Melville driver also tried to turn to the West, which was his right, so that when the right front of the Acme tractor was just beyond the left front of the Melville truck, the collision occurred.

We must, therefore, conclude that here there was sufficient evidence to go to the jury on the negligence of appellant and on whether that negligence was the proximate. cause of the collision. The jury's verdict is, therefore, binding on us. See Beall v. Ward, 158 Md. 646, 149 A. 543. As to driving on the wrong side of the road as evidence of negligence, see Kaline v. Davidson, 146 Md. 220, 126 A. 68; Coplan v. Warner, 158 Md. 463, 149 A. 1; Fisher v. Finan, 163 Md. 418, 163 A. 828. And see Christie v. Callahan, 75 U.S.App.D.C. 133, 124 F.2d 825, 839, 840, where Justice Rutledge speaking for the Court of Appeals of the District of Columbia, said: "Generally speaking, direct and positive testimony to specific acts of negligence is not required to establish it. Circumstantial evidence is sufficient, either alone or in combination with direct evidence. Circumstantial evidence may contradict and overcome direct and positive testimony. The limitation on its use is that the inferences drawn must be reasonable. But there is no requirement that the circumstances, to justify the inferences sought, negative every other positive or possible conclusion. The law is not so exacting that it requires proof of negligence or causation by testimony so clear that it excludes every other speculative theory."

■ Appellant also complains of the instruction given by the District Judge that any negligence of Ewell, who was driving the Acme truck at the time of the accident, was not to be imputed to Morris under the doctrine of joint enterprise. The evidence clearly shows that, at the time of the collision, Ewell was driving the Acme truck. Ewell was at the wheel when this truck left the Maryland Trucking Center on its fatal journey, and Morris was then seen, taking off his shoes, beside Ewell. After the accident, Ewell's body was lying on the left running board, with his feet stuck between the clutch and brake pedals. The body of Morris was found "lying on top of what remained of the dash." The evidence showed that Morris and Ewell had equal authority to drive the Acme truck and that the one who was not driving was permitted to sleep in a bunk located above and behind the driver's seat. No evidence indicated that the one of the two who was not driving had any measure of control over, or responsibility for, the acts of the one who was driving.

We find no ground for reversal in the giving of this instruction. The record is barren of any evidence tending to show any negligence on the part of Ewell contributing to the accident. Further, we think there was not sufficient evidence to take to the jury the question of joint enterprise here with the attendant theory of imputation of negligence.

Counsel for appellant gave little emphasis to this point, admitting that "the direct point here involved has never been passed on in Maryland". Certainly he can derive little comfort from the cited passage in 4 Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., § 2494, page 306. The same is true of the only case stressed in his brief, Kirkland v. Atchison, Topeka & Sante Fe Railway Co., 104 Kan. 388, 179 P. 362, for there, to quote counsel's own words: "Deceased and another laborer had joint control of an automobile, and deceased was instructing the other as to a milk delivery route, and they attempted to cross a railroad track in front of an approaching train, which they saw or could have seen, had they looked."

■ The doctrine of imputation of negligence, in fields such as that here involved, does not seem to be highly favored by the courts. For the application of the doctrine, there must exist something in the nature of a mutual agency, contractual or quasi contractual, akin to a partnership of limited purpose and extent. Philadelphia, Wilmington & Baltimore Railroad Co. v. Hogeland, 66 Md. 149, 7 A. 105, 59 Am.Rep. 159; Earp v. Phelps, 120 Md. 282, 87 A. 806; McAdoo v. State, 136 Md. 452, 111 A. 476. Quite close to the instant case on the facts is Bernard v. Jennings, 209 Wis. 116, 244 N.W. 589, holding that there was a lack of joint enterprise. The relationship of fellow servants between Morris and the driver is not ground in itself for the imputation of negligence. Marmar v. Farrell, 116 Pa.Super. 586, 177 A. 224; Restatement of Torts, paragraph 491d. The same is true when two occupants of an automobile merely take turns in driving. Isaacson v. Bos-

ton, Worcester & New York Street Railway Co., 278 Mass. 378, 180 N.E. 118.

■ Nor do we find reversible error in the refusal of the District Judge to give, as requested by appellant, this instruction: "The defendant requests this Honorable Court to instruct the Jury that in determining whether or not the defendant's truck was being operated negligently at the time and place of the accident complained of, they may not find the defendant guilty of negligence by speculation and conjecture as to what then and there took place, and they may find the defendant so guilty only upon the basis of well defined act or acts of negligence at the time and place of said accident."

Perhaps some negative instruction of caution may have been advisable here. Shafer v. State, for Use of Sundergill, 171 Md. 506, 189 A. 273. However, the District Judge fully and clearly instructed the jury as to the burden resting on the plaintiff to prove negligence, the proximate causation resulting from such negligence, and also as to the meaning of negligence. Among these instructions were the following:

"Now, what do we mean by burden of proof? By that we mean in a case of this kind that they must satisfy you by the preponderance of the evidence that they are entitled to recover. If you are not satisfied that that burden has been sustained, in other words if you are not satisfied that the plaintiffs have made out a case by the weight of the evidence, or if you find that the evidence balances—sometimes called evidence standing in a state of equipoise— then that preponderance will not have been established to your satisfaction, and in such case it would be your duty to find for the defendant.

"Now, what is the case that the plaintiffs would have to make out? That brings us at once to the basis of the whole suit, namely, what is meant by negligence in the law.

"As to that I instruct you, first, that the mere happening of the collision, this very tragic and most distressing accident, raises no presumption of negligence; that the negligence is a matter that must be proved and must be established.

"What then must be established? What do we mean by negligence in the law as applied to a case of this kind? We mean by 'negligence' that failure to use that degree of care or prudence that the average reasonable man would use under the given circumstances. That is a pretty broad rule, but it is, of necessity, broad in order to be of general application and guidance. But the law goes further and says that it is necessary, in order for a plaintiff to recover, to prove by the weight of the evidence that the defendant has been guilty of negligence. It is necessary, in addition, to prove that that negligence has been a proximate cause of the damage complained of. In other words, you may have a situation where one has been guilty of some wrongdoing, some negligence, an act of commission or omission of a very serious character, but unless it is directly related with causal connection to the damage complained of, then the law says that there is no liability."

We do not believe the jury was misled by the failure of the judge to give the instruction requested by the appellant.

■ Appellant next objects to the rulings of the trial court in admitting the testimony of the witnesses, Bowden, Davis and Williams.

Bowden testified that at 11:15 p. m. on the night of the collision, he saw a Melville truck in Berlin (at least nine miles from the place of the accident), that he saw the occupants go into a beer tavern, that they same out soon thereafter and asked him the way to Cape Charles, that he heard the tires of the truck squeal as it rounded a curve in Berlin and gave his opinion that this squealing was due to the fact that the driver was not familiar with the road. The trial judge admitted this evidence but struck out the opinion of the witness as to the cause of the squealing of the tires.

We think, as did the trial judge, that this evidence is admissible in general to identify the Melville truck and trace its course on the last lap of its ill-fated trip.

The evidence as to asking the way seems proper to indicate a lack of familiarity with the road. Drinking beer does not add to the alertness or wakefulness of a driver and the jury might properly infer (in the absence of rebuttal testimony) that the occupants of the Melville truck entered the beer tavern for the purpose of drinking beer. The squealing of the tires may be somewhat remote, though it may tend to indicate the custom of the driver in taking curves.

Williams testified as to the two men, in his tavern, at the time indicated by Bowden, one drinking one bottle of beer and the other two or three bottles of beer but that their conduct was all right and he saw no signs of intoxication on the part of either man. This evidence supplemented that of Bowden and we think it was unobjectionable. In any event, even if parts of the evidence of Bowden and Williams were inadmissible as being too remote, since its weight (if any) was for the jury, we find here no adequate ground for reversal.

The much more important testimony of Davis as to the manner of operation of the Melville truck, when the Melville truck passed the truck driven by Davis approximately 300 yards from the scene of the accident seems clearly relevant and admissible. See Taxicab Co. v. Hamburger, 146 Md. 122, 128, 125 A. 914; Lange v. Affleck, 160 Md. 695, 155 A. 150, 79 A.L.R. 1274; Baltimore & Ohio Railroad Co. v. State, 169 Md. 345, 353, 181 A. 830. And see, particularly, Shellenberger v. Reading Transportation Co., 303 Pa. 122, 154 A. 297, 299.

Davis testified that he dimmed his lights, which the Melville truck failed to do. He testified that the Melville truck was hogging the road (that is, that it was too far to its left, straddling the painted centerline of the road) and that Davis was thereby compelled to hit the dirt (that is, Davis had to drive with his right hand wheels completely off the macadam and on the dirt shoulder). Davis further stated that the speed of the Melville truck was in excess of 45 miles per hour. If the Melville truck maintained this rate of speed, less than fifteen seconds elapsed between the passing of the Melville and Davis trucks and the fatal accident.

We conclude by quoting, as being particularly pertinent to many of the issues in this case, the apt words of Mr. Justice Murphy in Lavender v. Kurn, 66 S.Ct. 740, 744 (a personal injury case): "It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

The judgment of the District Court is affirmed.

Affirmed.