## UNITED STATES v. UARTE.
### No. 12042.

United States Court of Appeals
Ninth Circuit.
May 17, 1949.

See also, D.C., 7 F.R.D. 705.

James M. Carter, U. S. Attorney, Ernest A. Tolin, Clyde C. Downing, and Max F. Deutz, Asst. U. S. Attorneys, Los Angeles, Cal., for appellant.

Stammer & McKnight, W. H. Stammer, and Galen McKnight, Fresno, Cal., for appellee.

Before DENMAN, Chief Judge, and STEPHENS and BONE, Circuit Judges.

BONE, Circuit Judge.

This is an action brought under the Federal Tort Claims Act, 28 U.S.C.A. § 921 et seq.,* in which appellee recovered judgment against appellant. Appellee's complaint alleged in general terms that he sustained serious personal injuries and property damage as the result of an automobile collision caused by the negligence

---

* 1948 Revised Judicial Code, 28 U.S.C.A. §§ 1346, 2671 et seq.

of two Federal Government Navy Department employees (petty officers) while they were driving a Government-owned automobile in the performance of official duties within the scope of their employment. The specific charge is that they drove a Navy Department "station wagon" automobile in such a negligent manner as to cause it to collide with his sedan automobile which in turn caused his sedan to come into collision with a truck and trailer then going in the opposite direction. The resulting collision inflicted upon appellee the aforesaid injuries and caused damage to his sedan.

The accident in question occurred about 11:30 P.M. on a paved highway near Madera, California, at a point where the paving was approximately 22 feet in width. It was raining and the highway was slippery. Appellee was driving in a southerly direction and the Navy car was proceeding in the same direction at some point behind appellee's car. A heavy truck to which was attached a semi-trailer and a trailer was then proceeding in a northerly direction on the same highway. The collision which occurred involved all three vehicles; both Navy men were killed and their car practically demolished. Appellee received a fractured skull and brain concussion resulting in a complete amnesia as to the facts of the accident. No other witness saw the accident except McCoy, the driver of the truck, and his wife who was riding with him. She was unable to add anything of substance to his testimony.

The record before us calls for emphasis upon the fact that the three-vehicle crash occurred with appalling suddenness on a dark and rainy night. This fact probably accounts for some uncertainty which characterized the testimony of McCoy. It is certain that a calm appraisal by McCoy of the precise movements and positions of the fast moving three vehicles at the instant of the crash was well-nigh impossible. He was abruptly confronted with a highly dangerous situation; his truck-trailer combination weighing 55,000 pounds was then going 40 miles an hour on his own right side of the highway. His own safety and that of his wife must have appeared to be of supreme importance in the split-second before the cars caromed off one another

and caused his heavy truck-trailer combine to "jack-knife" across the highway.

The Navy car was almost completely demolished and after the collision was about 40 feet north of the position of the other vehicles.

Photographs and sketches were employed to show marks on the cars and on the highway, and the position of the various vehicles right after the crash.

There was testimony that the Navy car was coming up behind appellee's car at a high rate of speed, an estimate placing this speed at 70 or 80 miles per hour at a point a few miles north of the point of the collision.

■ The Government is persuaded that this confusing and kaleidoscopic pattern of events fails to show a degree of negligence of the operator of the Government car which imposes liability on the Government. It avers that inferences drawn therefrom by the trial court lack support in the evidence.

We cannot agree with the Government's view. It appears that certain aspects of the evidence and testimony did trouble the trial judge but this was natural since he was here confronted with a difficult task in appraising and weighing all of the facts disclosed in the evidence. The totality of these facts caused him to finally conclude that the negligence of the driver of the Government car was sufficiently established as the proximate cause of the accident. As he indicated, he was called upon to exercise judgment, from hearing the evidence and observing the witnesses, and we cannot say that the inferences he drew from the confusing and complicated array of facts are unreasonable or lack support in the record.

Appellant advances three major reasons for reversal of the judgment: (1) The evidence does not support the judgment in view of the fact that only the truck driver (McCoy) and his wife were eye-witnesses; (2) error in admitting evidence of speed of the Government car at remote points which were 4 to 11 miles north of the point of the collision, and without any additional evidence showing the speed or manner of operation of said vehicle be-

tween these remote points and the scene of the accident, or any evidence indicating that its speed was in any way a cause of the accident, and (3) error in permitting McCoy to be called and examined as an adverse witness by appellee pursuant to Rule 43(b), Federal Rules Civil Procedure, 28 U.S.C.A.

We have already indicated our lack of agreement with the first of these contentions.

As to the second contention. There was evidence from estimates tending to establish facts from which the court could logically infer that for over a course of several miles north of the place of collision, the Navy car had been continuously proceeding at a rate of speed of from 70 to 80 miles per hour; that it had then been handled in a reckless manner in passing a car ahead on a slippery highway; that its condition after the accident indicated an impact of frightful violence. We think that the evidence in this case gave rise to a legitimate inference that the Government car had been continuously driven at a high and dangerous rate of speed for several miles before it reached the scene of the accident and that it was maintaining such high and dangerous rate of speed at the time and place of the accident at which point it attempted to pass appellee's car in a reckless manner which caused the collision.

In respect to the actions of the Government car at the time of the collision, we think that the trial court may well have concluded from McCoy's testimony that in attempting to pass appellee's car the Navy car "clipped" the left rear fender of appellee's car at a time when there was insufficient clearance between appellee's car and the approaching truck driven by McCoy, and that this contact with or "clipping" of appellee's car caused it to skid and turn into the path of the truck. McCoy had testified that he saw "the two lights bunched together and then one started skidding." His memory being refreshed by reference to a certain statement made by him (hereafter referred to) and in answer to questions of court and counsel for appellee, McCoy stated in substance that "the two pairs of lights were so close at that moment that they seemed as one * * it [Uarte sedan] just seemed to fairly jump out there. That is the reason that I thought he got clipped or blew a tire." The trial judge asked McCoy if this "statement" he had given the Madera County District Attorney at the scene of the accident was true, to which McCoy answered "to the best of my knowledge, yes, sir."

We think that the facts in this case portray a situation where admissibility of evidence as to the speed of the Navy car at the times and places mentioned in the testimony was a question to be determined in the sound discretion of the trial court. It wanted to examine every act of the drivers of the three cars which might have caused or contributed to the cause of the accident and from the sum of the ascertainable facts in connection therewith determine where responsibility must rest. The question of remoteness as related to the probative value of such evidence was to be considered and weighed by the trier of the facts, and under the facts of this case we conclude that its reception was not prejudicial error.[1]

The third contention asserts error in permitting Uarte to call and examine McCoy as an adverse witness under Rule

---

[1] It is for the trial court to determine in each case under all of the circumstances and evidence whether or not the testimony offered is too remote to have probative value. The ruling of the trial court admitting such evidence will not be disturbed in the absence of obvious abuse of discretion, a situation not present in this case. The following cases indicate the breadth of the rule applied to offered testimony concerning speed. Dromey v. Inter State Motor Freight Service, 7 Cir., 121 F.2d 361; Melville v. State of Maryland, 4 Cir., 155 F.2d 440; Pruitt v. Krovitz, 59 Cal.App.2d 666, 139 P.2d 992; Ackel v. American Creamery Co., 12 Cal.App.2d 672, 55 P. 2d 1195; Traynor v. McGilvray, 54 Cal. App. 31, 200 P. 1056; Lundgren v. Converse, 34 Cal.App.2d 445, 93 P.2d 819; Ritchey v. Watson, 204 Cal. 387, 268 P. 345; Mathews v. Dudley, 212 Cal. 58, 297 P. 544. As to receiving estimates of speed see Berryman v. Worthington, 240 Ky. 756, 43 S.W.2d 5.

43(b), Rules Civil Procedure. Appellant's brief does not quote or refer to any objection made to the testimony of McCoy. The court appears to have been of the view that McCoy was "adverse to everybody." The record discloses that McCoy was a co-defendant (along with his employer) in an action filed in the Superior Court of Madera County, California in which appellee was the plaintiff, this action arising out of the same incident which gave rise to the instant case. McCoy had previously been a defendant in the instant action but on a motion raising the question of jurisdicton under a "joinder" issue, he was dismissed out of this case by order of another judge of the court, the United States alone being retained herein as a party defendant.

A reading of the testimony convinces us that the court did not abuse its discretion in indulging the presumption that McCoy, a former defendant in this action, would be an unwilling witness since it was natural that he would be unwilling to take the witness stand and confess any error on his part.

We note that while McCoy was interrogated as in the case of an unwilling witness, appellee did not attempt to contradict and impeach him as an adverse party. The court permitted appellee to use the statement above referred to but it was not put in evidence and was used, not for impeachment, but simply and only to refresh the witness' memory. We have no doubt of the right of the court, in its discretion, to permit such a refreshing of memory even in the absence of resort to the provisions of Rule 43(b). Appellant itself resorted to this statement for that purpose.

In the early part of his testimony McCoy frankly stated to the court that he had "a notoriously poor memory, anyway," and since the record indicates a careful and commendable effort on the part of the judge to get at all of the material facts, we see no error in permitting such a use of the statement. The trial judge was, in fact, employing sound logic in striving to avoid errors in his ultimate appraisal of the facts.

We have considered other contentions of appellant and find them without merit.

Judgment affirmed.