SMITH v. SOCONY VACUUM OIL CO., Inc.
No. 131.

Circuit Court of Appeals, Second Circuit.
April 4, 1938.

Louis Mead Treadwell, of New York City (Henry B. Potter, of New York City, of counsel), for appellant.

George J. Engelman, of New York City, for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal by the defendant from a judgment in an action by the plaintiff to recover damages (1) under the Jones Act, 46 U.S.C.A. § 688, based on alleged negligence, and (2) to recover for maintenance and cure.

Plaintiff was an oiler working in the engine room of defendant's ship. It was a part of his duty to determine from time to time whether the low-pressure bearing and journal of the engine required lubrication. In doing this he was accustomed to examine the low-pressure journal about once every twenty minutes in order to discover by touch whether it was getting too hot. In the course of the inspection he would also look at the color of the oil that had come off on his fingers because the color would indicate whether the journal was beginning to gripe owing to excessive friction. Both the color of the oil and the heat of the journal would determine whether there was need of more lubrication. In order to reach the journal, he placed his right foot on a step above the floor of the engine room, placed his left foot on the crank frame to which the step was attached, and held on to the slush pan with his left hand while with his right hand he reached down to feel the journal and determine whether it was overheated. In attempting to resume his position on the floor of the engine room he started to bring down his left foot. This, he said, caught on a bracket which had got out of repair and had swung loose from the step which it was designed in part to support. The catching of his leg in the loose bracket caused him to tumble and is said to have resulted in injuries for which he sought to recover damages in the present action.

The plaintiff testified that he had informed the first assistant engineer of the defective condition of the bracket some two or three weeks before the time of the accident. It is an inference from the plaintiff's version of the case that he attempted to inspect the journal in the only way practicable. He said in substance that if he had stood on the floor of the engine room while reaching to feel the journal he would have been in danger of falling into the opening adjacent to the journal because he could not reach the grab iron with his right hand to support himself while making the inspection.

The foregoing is believed to set forth the essentials of the plaintiff's story and to have been the basis for the recovery of $5,000 allowed by the jury upon the first count of the complaint for the injuries resulting from negligence, and for the recovery of $535 allowed by the jury under the second

count for maintenance and cure. From the judgment for $5,578.39 entered on the verdict for the above two items the defendant appeals.

A number of witnesses called for the defendant testified that the step had never had a supporting bracket and that there was nothing defective about it; that the plaintiff could feel of the journal and determine whether it needed lubrication while standing with both feet on the floor of the engine room, and that the step, which was ten inches above the floor, was not designed for use while the vessel was at sea, but only for use in port while repairs were being made. There was also testimony by the first assistant engineer that he never saw the plaintiff or any of the other oilers standing on the step to feel the bearing, and that it would be dangerous to do so. There was also testimony by the first assistant engineer that he had seen the plaintiff feel the journal while having both his feet on the floor plate and his right hand on the guard rail. Although plaintiff's story is not supported by as much testimony as defendants, we do not regard it as too inherently improbable for submission to the jury.

■■■ Defendant's principal contention on this appeal is that, even if there was a defective bracket below the step and it swung out of place, caught plaintiff's leg as he stepped down and caused him to tumble, yet in performing his task he had a choice of methods—one the safe method of standing on the floor of the engine room and supporting himself by the guard rail (as he leaned forward) and the other the dangerous and really inconvenient method of climbing up on the step and reaching down with the chance that he might encounter the defective bracket when he returned to the floor. Because the above choice was available and no one ever directed the plaintiff to inspect the journal by using the step, defendant argues that, when he chose the unsafe course, he must be regarded as having assumed the risk incident to the method he adopted. This point was sharply raised by the refusal of the trial judge to recognize assumption of risk as a defense under any circumstances. He left to the jury only the question of negligence and contributory negligence and refused defendant's request to charge that, if they believed that "the plaintiff could have felt the bearing while standing with both of his feet on the floor plate and that it was not necessary for him to stand upon the step plate, he assumed the risk of any injury he may have sustained." The judge, after saying: "I refuse so to charge," immediately added: "Gentlemen I charge you now that the ship owner is under a duty to furnish a seaman with a safe place to work, give him safe appliances and safe tools, and that is his duty. There is no contributory negligence or assumption of risk on the part of the plaintiff in so far as the defendant fails in these duties." The defendant's counsel excepted.

In the recent case of The Arizona v. Anelich, 298 U.S. 110, 56 S.Ct. 707, 712, 80 L.Ed. 1075, the question before the Supreme Court was whether a cause of action prosecuted under the Jones Act by the representative of a deceased seaman and arising from death of the seaman attributed to a defective appliance for stopping a winch was subject to the defense of assumption of risk. Justice Stone, who wrote the opinion, stated that the Jones Act brought into the maritime law, as theretofore existing, new remedies, such as recovery by employees from shipowners for negligence, in spite of the contributory negligence of the former, but with apportionment of damages between employer and employee. He went on to say that the purpose of the Jones Act was to enlarge rather than to narrow the protection given seamen by the maritime law and remarked that no American case appears to have recognized "assumption of risk as a defense to such a suit" under the maritime law. He concluded his opinion by saying: "No provision of the Jones Act is inconsistent with the admiralty rule as to assumption of risk. The purpose and terms of the Act, and the nature of the juristic field in which it is to be applied, preclude the assumption that Congress intended, by its adoption, to modify that rule by implication." For the above reasons it was held by the Supreme Court that the defense of assumption of risk was not a bar to recovery for the injuries suffered by the seaman through the defective appliance. This holding was reiterated in Beadle v. Spencer, 298 U.S. 124, 56 S.Ct. 712, 80 L.Ed. 1082, in the case of a seaman engaged in unloading lumber from his vessel while in port. In Beadle v. Spencer, 298 U.S. 124, at page 129, 56 S.Ct. 712, 714, 80 L.Ed. 1082, Justice Stone said that it made no difference whether the vessel was in port or at sea and that the circumstance that she was in port afforded no ground for relaxing the admiralty rule "applicable under the Jones Act,

that assumption of risk is not a defense to a suit to recover for injury to a seaman resulting from unseaworthiness or defective equipment, because he chances to be in some measure less amenable to the iron discipline of the sea than others who go upon foreign voyages. Even so his freedom to avoid the risk is far from comparable to that of the employee on land where the defense of assumption of risk originated and has been maintained. No such distinction appears to have been recognized in the maritime law."

It is true that the above decisions of the Supreme Court were not rendered in cases where the seaman had a choice of places within which to work or of equipment for use in his work. At least the court discussed no such question. But the language in both opinions is general and sweeping and seems to preclude assumption of risk as a defense to an action by a seaman who seeks to obtain indemnity under the maritime law or under the Jones Act for injuries arising from a defective appliance or from unsafe working conditions. In view of the language of the Supreme Court in the foregoing cases, the decisions which have allowed the defense of assumption of risk in actions under the Jones Act even where the injury arose from a defective appliance or an unsafe place to work, provided the seaman could have chosen a safe appliance or place to work, instead of the one selected, cannot be followed. In view of what the Supreme Court has said and the growing tendency to limit the defense of assumption of risk, and when indemnity is allowed, to apportion damages according to fault rather than to bar them altogether, we feel confident that a sailor cannot be expected to weigh alternatives when doing his work at the expense of losing all rights to recover if he has made a careless choice. His penalty under the Jones Act for such carelessness is an abatement of his recovery in proportion to his own contributory negligence. We do not, however, suggest that a seaman who uses a defective appliance or chooses an unsafe place to work, contrary to orders, could recover indemnity from his employer on any theory, and our decision in Johnson v. United States, 2 Cir., 74 F.2d 703, may be sustained because the seaman there was given orders not to go to his messroom over an exposed deck, but to take a shaft tunnel in rough weather. Here the defendant argues that, aside from the failure of the trial judge to charge as requested in respect to assumption of risk (a charge which we hold was properly refused), he erred in his subsequent statement that: "There is no contributory negligence or assumption of risk on the part of a plaintiff in so far as the defendant fails in these duties"; that is to say, the duties to furnish the seaman with a safe place to work and with safe appliances. But the judge had already carefully instructed the jury as to the proper verdict in case they should find that there was negligence on the part of both parties, and had told them that after determining the amount of damages they should deduct a sum in proportion to the extent that plaintiff's own negligence had contributed to his injuries. The remarks which the judge made when declining the request to charge about assumption of risk cannot possibly have led the jury to believe that proof of contributory negligence would not have the effect of lessening the amount of the recovery. He obviously meant to say that neither contributory negligence nor assumption of risk would be a legal bar to recovery. If defendant's counsel had any objection to the remarks and thought in view of the whole charge that they were misleading, he should have specifically pointed out the difficulty so that the judge could clarify the statement if it was obscure. Instead of that he took a general exception and said at folio 1261 that his only exception "which possibly is not an exception" to the charge is that the court did not make sufficiently clear the maintenance and cure feature of the case. The court thereupon further defined the responsibility of a shipowner for maintenance and cure and no exception was taken to the definition.

We have examined the rulings of the trial court in regard to the admission and exclusion of evidence and find no error. The only possible criticism is the admission of Plaintiff's Exhibit No. 3. This was a statement prepared by the third mate at the time he paid off the plaintiff, of which he gave the plaintiff a carbon copy. There was evidence that he was in charge of the ship at the time. The defendant had already put in evidence another report of the accident, prepared by the master. Each report constituted a record of the accident, and, if one was to be admitted, the other was properly received. Casey v. Boston & Maine R. R., 231 Mass. 529, 121 N.E. 403. Moreover, Exhibit No. 3 at worst only reiterated the story which plaintiff had al-

ready told and was based on no more than his report to the mate.

 Objection was also made to the awards for negligence and for maintenance and cure on the ground that each was excessive. There was proof of some damage under each count, and this court is without power to reduce the verdict.

Judgment affirmed.