**OLIVER v. YELLOW CAB CO.**
**No. 6542.**

Circuit Court of Appeals, Seventh Circuit.

July 5, 1938.

Samuel A. Ettelson, Edward C. Higgins, and Erwin M. Treusch, all of Chicago, Ill., for appellant.

Gariepy & Gariepy, of Chicago, Ill. (Fred A. Gariepy, of Chicago, Ill., of counsel), for appellee.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

This is an appeal from a judgment for damages in the amount of $3,000 in favor of the plaintiff in a personal injury action. The cause was submitted to the court upon waiver of jury by both parties, and appellant assigns as error the denial of its motion for judgment in its favor, and various rulings on evidence.

Appellee is a physician, fifty-two years of age, residing in Charleston, Illinois. He testified that on December 21, 1936, while he was riding as a passenger in a taxicab owned and operated by appellant, he was injured by being thrown violently from his seat, striking the front seat, when the cab was stopped very suddenly. At the time of the accident, he was en route from the Illinois Central Railway Station to the John B. Murphy Hospital located on Belmont Avenue near Broadway in the city of Chicago. He testified that the driver drove quite fast along Michigan Avenue and west on Belmont, and speeded up a little as they approached Broadway, the green light being in their favor. He estimated the speed at not less than forty miles an hour along Michigan, and fifty as they crossed Broadway. At the time there were cars parked in a solid line along Belmont on both sides of the street west of Broadway, and a car double parked on the north side, and one on the south side also double parked, about thirty feet farther west. He testified that the street at this point was wide enough for five lanes of traffic and that as the driver of the cab swerved around the double-parked car on the north, that car started up and, in order to avoid a collision, the cab driver came to a sudden stop, throwing him from his seat and striking his right shoulder against the back of the driver's seat. He said that he suffered quite severe pain at the time, but told the driver that he did not think he was very badly hurt. He entered the hospital at once and was treated for the injury.

Appellee had made three trips prior to the one here involved, for the purpose of having heat treatments on account of an earlier injury to his right shoulder, and he testified that at the time of this trip he had no more pain, and his attending physician who administered the treatments said that this trip was for the purpose of a final check-up. The injury here involved, however, made it necessary for him to continue his treatments, and he had to make five additional trips to Chicago for treatments.

In addition to appellee's testimony, he introduced two other witnesses, both physicians, who testified as to the nature and extent of his injuries. The first was the physician who had been administering the treatments and who stated that the condition for which he had been treating him had cleared up, and he had ordered him to return this trip for a final check-up. He stated that there was about a 15 per cent limitation of movement in the right shoulder, and that it was unlikely in a man of his age that the condition would be completely relieved. A second physician also testified that the condition here present in the shoulder always resulted in a permanent partial disability of the shoulder. He further stated that assuming that the earlier condition had cleared up, as testified by the attending physician, that condition could be aggravated by the injury, and there was new injury.

Appellant's only witness was the driver of the cab who testified that he was driving only twenty to twenty-five miles an hour as he approached the parked car, and that the street was wide enough for four lanes of traffic. He said that when he started past the stop light a man pulled out from the curb quite suddenly in front of the cab, and that he could have passed the car had it remained stationary, without crossing over to the south half of Broadway, and when the car pulled out the cab was about fifteen or twenty feet back of it, and that there was another car coming toward him from the west. He thought the cab moved about fifteen feet after he applied the brakes. He also testified that appellee was sitting on the seat on the car when he looked back immediately after the occurrence, and that when he asked for his name and address in order to make a report of it appellee said, "No, it is all right, skip it," and did not give his name, hence the driver made no report.

The court found that there was liability and fixed the damages at $3,000, considering the fact of appellee's profession and that he was unable to do certain types of surgery which he had hitherto performed, and stated that he did not feel sure that the injury was going to be permanent or he would fix the damages at a larger amount.

Appellant contends (1) that it was not liable for the injury, if any, suffered by appellee, for the reason that the proximate cause was the negligence of the parked car which suddenly started forward into traffic, thereby necessitating the sudden stop in order to avoid serious injury.; (2) that

there was no proof that this particular accident caused the injury to appellee's shoulder since he had been receiving treatment for an injury to that shoulder for some time prior to the accident; and (3) the court erred in the admission of incompetent and the rejection of competent evidence.

We are satisfied that under the facts here presented appellant was quite as much at fault as the driver of the parked car. While there is no evidence in the record as to the state of *moving* traffic at the time, it is clear that there were a large number of cars on the street parked in a solid line along each curb, and with at least two parked double near appellee's destination. This being the case, it was appellant's duty to its passenger to proceed with great care and to be in such control of its cab that it could be stopped quickly without violent lurch. To take fifteen feet to stop the cab with the violence here described certainly negatives the idea of due care and control. While it is perhaps true that the injury would not have occurred had it not been for the act of the parked car in moving out into the stream of traffic, that fact does not excuse appellant. We cannot agree with its contention that it was not bound to anticipate that a parked car would move forward into the lane of traffic without warning. It relies upon a statutory provision of the State of Illinois to the effect that no person shall start a vehicle which is stopped, standing or parked, unless and until such movement can be made with reasonable safety, and a further provision defining violation of the statute as a misdemeanor and imposing penalties therefor. See Smith-Hurd Illinois Annotated Statutes, Ch. 95½, sections 161, 234. From this it argues that it was not bound to anticipate that the driver of the parked car would violate the law by his action in darting out from a stationary position. It quotes from the case of Chicago City-Railway Co. v. Fennimore, 199 Ill. 9, 64 N.E. 985, 987: "Anticipation of negligence in others is not a duty which the law imposes. On the contrary, it is a presumption of law that every person will perform the duty enjoined by law or imposed by contract. Where, for instance, the traveler knows that the law requires a railroad company to ring a bell, or sound a whistle, he has a right to rely upon the performance of such duty by the company." There the court allowed a pedestrian, struck by a street car operating with a very dim light on a foggy night without reducing speed, to recover

damages for her injuries, holding that under those facts she was not negligent in not seeing the car approaching. That this rule does not operate to relieve from all care and caution the party entitled to expect the other party to perform his duty, see Thomas v. Buchanan, 357 Ill. 270, 192 N.E. 215, citing the Fennimore Case among others. We think this case is important as reiterating the rule of the Fennimore Case, and yet holding that the right not to have to anticipate the negligence of others does not, of itself, operate to relieve a party from the exercise of due care and caution. So here, while appellant's driver had a right to expect the driver of a parked car not to move into traffic until it could be safely done, nevertheless, he was still bound to keep a careful watch, and to move at such a rate of speed that his car was within control at all times so that it could be stopped without a violent jolt.

Appellee refers to a number of Illinois cases which hold that a driver in the exercise of reasonable care is bound to anticipate that parked cars may turn into the street. See Sullivan v. Ohlhaver Co., 291 Ill. 359, 126 N.E. 191; Harrison v. Bingheim, 350 Ill. 269, 182 N.E. 750; Fina v. Richardson, 293 Ill.App. 133, 11 N.E.2d 842. We think this is consistent with the rule of the Fennimore Case, as followed in the case of Thomas v. Buchanan, supra, and following that as to the facts before us in the case at bar, we hold that appellant was not relieved of liability for the injuries caused by the too sudden stopping of its car necessitated by the act of a second car in negligently moving out into the stream of traffic.

We cannot agree with appellant that there was no competent evidence to prove that this particular accident caused the injury complained of. Appellee and his physician testified that the condition for which he had been receiving treatment had cleared up, and that he was making a final visit for check-up. Another physician testified as to the degree of the disability and the probability of its permanence. It is unnecessary for us to cite authority for the proposition that whether the condition was wholly caused by this accident, or was an aggravation of a pre-existing injury, appellant is liable for it, to the extent that the accident caused it. It was for the court to determine the damage resulting from the accident, and since there was very substantial medical evidence to support the court's finding, and no evidence offered to contradict it, we cannot say that its determination was in error.

Appellant urges, however, that the court reached its conclusions on the basis of evidence improperly admitted, and refused to permit the introduction of certain competent evidence. It admits the rule that "in a case tried by the court without a jury the admission of improper evidence by the court is not usually regarded as reversible error, on the theory that the court will consider only such evidence as is competent," but argues that this rule is inapplicable here "in view of the fact that the court must necessarily have considered the improper evidence." Put into other words, appellant's argument amounts to an assertion that there was not sufficient admissible evidence on which to base the finding of the court, hence it must have been reached on the basis of the inadmissible. From our reading of the entire evidence in the case, we cannot agree with this contention. We consider it unnecessary to discuss individually the numerous errors assigned with respect to the evidence, based on objections which were raised during the course of the trial, some of them without stating the ground on which they were based, some not until answers had been given, and some obviously without reasonable basis. We confine ourselves to the statement that our study of the entire record discloses no error of sufficient gravity to justify the reversal of the judgment, particularly in view of the fact that this was a trial by the court rather than by a jury.

We think there can be no question under the facts presented that appellant was liable for the injury suffered by appellee in the accident, and we are also convinced that there was adequate evidence to prove the fact and extent of that injury, and that there was no error in the action of the court in entering judgment in favor of appellee. That judgment is, therefore, affirmed.