JOHNSON et al. v. UNITED STATES.

No. 11948.

United States Court of Appeals Ninth Circuit.

Nov. 5, 1948.

Ryan, Askren & Mathewson and William J. Madden, all of Seattle, Wash., for appellants.

J. Charles Dennis, U. S. Atty., and Frank Pellegrini, Asst. U. S. Atty., both of Seattle, Wash., for appellee.

Before MATHEWS, BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

This action for damages under the Federal Tort Claims Act, 28 U.S.C.A. § 921 et seq. [1948 Judicial Code, 28 U.S.C.A. § 2671 et seq.], was brought against the United States for claimed pollution of appellants' so-called "clam farm" by vessels of the United States Navy. The alleged pollution occurred from December, 1945 on into 1946, when the Navy, because of the existing congested conditions of many of the country's ports and consequent reasons of safety, anchored sixteen of its ammunition cargo vessels in Discovery Bay, State of Washington. The vessels, known as "floating magazines," were capable of supplying ammunition at sea to various combat vessels of the Navy. They had previously been engaged in active logistical support of combat operations in the Pacific theater of war, and following the termination of hostilities with Japan on August 14, 1945, were sent to Discovery Bay there to wait assignment, according to the type of ammunition carried, to continental American ports for unloading when these ports became available. The vessels were manned and commanded by Naval personnel.

Appellants' complaint alleges that during this period these vessels discharged oils, sewage, and other noxious matter into the waters of Discovery Bay which polluted both the waters and the adjacent tide lands owned by appellants and upon which they had developed and maintained their commercial clam farm. As a result of this pollution the State of Washington on December 10, 1945 prohibited the taking of clams from appellants' lands for sale to the public, which order continued in force until the termination of the normal clam digging season. Damages are claimed for partial permanent injury to the clam farm and loss of the season's profits, totaling $46,000.

Appellee filed an answer generally denying all of the allegations of the complaint. Subsequently it moved to dismiss appellants' action [1] on the ground that the court lacked jurisdiction of the cause and supported this motion by affidavits setting forth facts which it contends show that at the time named in the complaint, the said Naval vessels were engaged in combatant activities during time of war. The motion was based on the following exception to the general waiver of sovereign immunity embodied in the Tort Claims Act:

§ 943 "The provisions of this chapter shall not apply to—

    *       *       *       *       *       *

(J.) Any claim *arising out of the combatant activities* of the military or naval forces, or Coast Guard, *during time of war.*" (Emphasis ours.) [1948 Judicial Code, 28 U.S.C.A. § 2680(j).]

The Government's motion to dismiss was granted and this appeal was taken.

■ An examination of the record fails to produce clear evidence of Congressional intent or policy which might guide us toward a proper interpretation of the language above quoted. The legislative history of the twelve general exceptions to sovereign liability appearing in the Act is singularly barren of Congressional observation apposite to the specific purpose of each exception but it may be safely concluded that the "exception" here involved relates to Governmental activities which by their very nature should be free from the hindrance of a possible damage suit.

■ Respecting this exception we think that there can be no room for either strict or liberal construction of words possessing the plain meaning we attribute to them. Measured against the background of conceded facts in this case, they mean exactly what they say, and the degree of definitive variance permissible within reason would not justify grammatical distortion of the meaning of words in common use. Proper construction does not require resort to all possible refinements of technical legal linguistics.

■ Appellee relies heavily upon the rationale that statutes by which a sovereign state yields its immunity from suit must be narrowly construed.[2] But the Federal Tort Claims Act is couched in unambiguous language which leaves no doubt in our minds of the meaning the legislators intended to attach to the language we here consider. The Act is a blanket renunciation of Government immunity to suit in the case of certain types of claims specifically enumerated therein and reflects a Congressional intent and purpose so definite and certain that we need not resort to interpretation of various prior statutes which affected piecemeal release of Government immunity from private suits. One obvious purpose of the Act appears to have been an effort to relieve Congress of the necessity of considering and legislating upon the large number of private claim bills which regularly appear on Congressional committee calendars. The legislative procedure on such claims had come to be regarded as cumbersome, unsatisfactory and unproductive of sound and reasonable standards for dealing with them. The policy which we think underlies and pervades the whole Act lends weight to the view that a claim of the general character of the one here involved is properly within the orbit of the Act and entitled to its procedural benefits unless it clearly appears that the "exception" above noted bars it.

■ It is also clear from the language of this "exception" that both of the conditions specified in the exception must necessarily coexist during the pertinent period in order to make available and effective the defense interposed by and through the Government's motion, that is to say, the naval vessels charged with causing the damage here asserted must not only have been actually engaged in "combatant activities" at the time covered by the complaint,

---

[1] The motion was called a motion to dismiss, but the court and the parties apparently elected to regard it and its supporting affidavits as a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A.

[2] Wallace v. United States, 2 Cir., 1944, 142 F.2d 240, 243.

but such "combatant activities" must be shown to have taken place "during time of war."

The admitted facts clearly show that during the period when these vessels caused the damage here alleged they had terminated their war work and were homeward bound. It is certain that they were not at that time engaged in "combatant activities" since the surrender of Japan had ended such activities. This being the case, and for the reason above indicated, it is not necessary to consider the effect of the absence or presence of the second of the two conditions, i. e., "during time of war," since the existence or absence of this condition in no wise changes the established and controlling fact that these Naval vessels were not engaged in "combatant activities" during the period charged in appellants' complaint.

Appellee claims that appellants ignore the effect of the words "arising out of" in the "exception" above noted. It argues that these are "qualifying" words which necessarily lead to the conclusions that on the facts the instant claim "arises out of" combatant activities. We cannot agree that the act of dumping noxious matter into the waters of a peaceful American harbor under the conditions here shown to exist must be held to have arisen out of combatant activities of these war vessels.

"Combat"[3] connotes physical violence; "combatant," its derivative, as used here, connotes *pertaining to* actual hostilities; the phrase "combatant activities," of somewhat wider scope, and superimposed upon the purpose of the statute, would therefore include not only physical violence, but activities both *necessary to* and in direct connection with actual hostilities. The act of supplying ammunition to fighting vessels in a combat area during war is undoubtedly a "combatant activity," but this fact does not make necessary a conclusion that all varied activities having an incidental relation to some activity directly connected with previously ended fighting on active war fronts must, under the terms of the Act, be regarded as and

held to be a "combatant activity." To so hold might lead to results which need not here be considered.[4]

The rational test would seem to lie in the degree of connectivity. Aiding others to swing the sword of battle is certainly a "combatant activity," but the act of returning it to a place of safekeeping after all of the fighting is over cannot logically be cataloged as a "combat activity." We conclude that the acts here complained of were not "combatant activities" within the meaning of § 943(J) supra.

Judgment reversed.

---

3 Webster's New International Dictionary, 2d Ed. 1935.

4 See Jefferson v. United States, D.C. Md.1947, 74 F.Supp. 209.