## UNITED STATES v. FOTOPULOS et al.

### No. 12066.

United States Court of Appeals
Ninth Circuit.

March 7, 1950.

Frank J. Hennessy, U. S. Atty., Rudolph Scholz, Asst. U. S. Atty., San Francisco, Cal., for appellant.

Carroll S. Bucher, San Francisco, Cal., for appellee.

Before DENMAN, Chief Circuit Judge, ORR, Circuit Judge, and YANKWICH, District Judge.

YANKWICH, District Judge.

On December 23, 1946, Peter Fotopulos, —to be referred to as the deceased,—was 49 years old. He was the husband of Diamond Fotopulos, and the father of Thomas F. Fotopulos, aged 10 years, and Joan Fotopulos, aged 9 years, who appear here and in the court below through their guardian ad litem, Diamond Fotopulos.

On that day, the deceased was driving a light Dodge truck north on Van Ness Av-

enue, in the City and County of San Francisco, California. As he approached the intersection of Van Ness Avenue and Bush Street, he was in the inner, or westerly lane of traffic and next to and parallel to the street car tracks and safety lane. He was following another vehicle, which was not identified in the record. There are controlled signal lights at the intersection regulating the traffic. California Motor Vehicle Code, Sec. 476. At the time of the accident, the red light was against north and south on Van Ness Avenue, and all traffic had stopped. It was nine-thirty in the morning, and the streets were dry.

After the deceased stopped behind a truck, which preceded him, an army truck belonging to the Fort Mason Post Motor Pool, United States Army, which was then an agency of the United States of America, and which was being driven by Charles A. Bailey, then a sergeant in the United States Army, collided with the rear of the deceased's truck, forcing it against the vehicle in front of it. The collision damaged it both at the front and rear and buckled it in the center. The deceased did not complain of any physical injury at the time. Later, he developed pain, finally entering the hospital on January 8, 1947, where he underwent an operation from which he died on January 10, 1947.

Expert medical testimony at the trial traced the death to a blow in the abdomen received at the moment of the collision, the force of which,—in the language of the Court's findings, "being transmitted inwardly caused a thrombosis in one of the mesenteric blood vessels." This interruption in the circulation to a portion of the transverse colon resulted in a necrosis of a portion of the wall of the transverse colon, which brought on a perforation of the colon.

On January 29, 1947, the present action was instituted, seeking damages for the death of the deceased upon the ground of negligence in the operation of the Army vehicle.

The Government's Answer, filed on September 19, 1947, denied negligence on the part of the driver of the Army vehicle, and pleaded contributory negligence. Trial before the Court resulted, on May 25, 1948, in a judgment in favor of the plaintiffs in the sum of $50,000.00. The judgment was bottomed on findings, filed on the same day, which traced the death to the injury received by the deceased at the time of collision, and placed sole responsibility for the accident on the negligence of the Sergeant, Charles A. Bailey, acting in the course and scope of his employment as a member of the United States Armed Forces.

The Findings negatived the claim of contributory negligence asserted by the Government and found, specifically, that the deceased "was not careless or negligent in or about the accident aforesaid and did not operate the said Dodge truck in a careless or negligent manner and that no negligence or carelessness and no act or deed of the said Peter Fotopulos in any manner was the proximate cause of or proximately or in any manner contributed to the said accident."

The Government has appealed from the Judgment. It attacks the Judgment on the ground that the trial court erred in finding (1) negligence on the part of the employee of the United States Army, and absence of contributory negligence on the part of the deceased, in finding (2) that the death was caused by the collision, and (3) in awarding excessive damages.

I.

The Legal Approach to the Problem

The action is instituted under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671–2680, the object of which is to waive the general immunity from liability for tort heretofore enjoyed by the Government. See Yankwich, Problems under the Federal Tort Claims Act, 1949, 9 F.R.D. 143. This Court has interpreted the act as "a blanket renunciation of Government immunity to suit", (in the instances named) Johnson v. United States, 9 Cir., 1948, 170 F.2d 767, 768, 769. Since that decision was rendered, the Supreme Court has set at rest the speculation which District and Circuit Courts have indulged in as to the scope of the statute, and has stated in United States v. Aetna Casualty & Surety Co., 70 S.Ct. 207, 210, that the language of the Act "indicates a congressional purpose that the

United States be treated as if it were a private person in respect of torts committed by its employees".

In speaking about the contention of the Government, made in every one of the cases which has arisen under the Act, that statutes waiving immunity should be construed strictly, the Court, in the same case, speaking through the Chief Justice, thus characterized this statute: "We think that the congressional attitude in passing the Tort Claims Act is more accurately reflected by Judge Cardozo's statement in Anderson v. John L. Hayes Construction Co., 243 N.Y. 140, 147, 153 N.E. 28: 'The exemption of the sovereign from suit involves hardship enough, where consent has been withheld. We are not to add to its rigor by refinement of construction, where consent has been announced.' " 70 S.Ct. 216.

So, in approaching any problem arising under the statute, we have before us this declaration of the Supreme Court which bids us consider the statute as a broad waiver of immunity and so apply it to the facts of each case.

 As the Congress, in waiving this immunity, chose to deprive the litigants of the right of trial by jury, 28 U.S.C.A. § 2402, the findings of a trial judge in a case of this character, take on a greater significance than in an ordinary civil tort action. For, in an ordinary tort action, within the jurisdiction of the United States District Courts, the right of trial by jury is guaranteed by the Constitution. Constitution of the United States, Amendment 7. It can only be waived by action of the parties. Rule 38(a), Federal Rules of Civil Procedure, 28 U.S.C.A. The Federal Rules of Civil Procedure command us to sustain the findings of a trial judge, unless clearly erroneous. Rule 52, Federal Rules of Civil Procedure. The same norm governs cases arising under this statute. See, United States v. Chicago, R. I. & P. Ry. Co., 10 Cir., 1948, 171 F.2d 377, 379–380; Wasserman v. Perugini, 2 Cir., 1949, 173 F.2d 305; Hubsch v. United States, 5 Cir., 1949, 174 F.2d 7, 8; United States v. Uarte, 9 Cir., 1949, 175 F.2d 110. This requires us to give due weight not only to conclusions drawn by the trier of facts from contradictory testimony, but also to inferences made from testimony which does not stand contradicted directly, but the validity of which is impugned by other evidence in the record, or by legitimate inferences from admitted facts. See Grace Bros. v. Commissioner, 9 Cir., 1949, 173 F.2d 170; Pacific Portland Cement Company v. Food Machinery and Chemical Corporation, 9 Cir., 1949, 178 F.2d 541.

## II.

### The Facts Supporting the Findings

 We have already indicated, in the main, the facts found by the trial court, from which the inference was drawn that the Government vehicle collided with the vehicle driven by the deceased after the deceased had halted in the traffic which was stopped by a controlled signal. This was negligence. California Vehicle Code, Sec. 476(c) 1. See Clinkscales v. Carver, 22 Cal.2d 72, 76, 136 P.2d 777; Taylor v. Sims, 1945, 72 Cal.App.2d 60, 164 P.2d 17.

Harry A. Failor was in a business building at 1530 Van Ness Avenue, on the south side of Bush Street, directly opposite the place of collision. He was sitting at a desk when he heard a crash. He ran out to see what had happened. He noticed a pick-up truck in the pedestrian lane and an Army truck directly behind it. The Army truck, he testified, was "parked right behind it". And he continued: "and the Army people there, out of the truck, I believe there was a woman with them, and a couple of army youngsters, and the gentleman that was driving the pick-up truck was arguing with them about the accident. The fellow said, 'Well, my brakes didn't hold', or 'I couldn't help it'." In this respect, Failor was corroborated by Justin L. McNeil, the owner of the used-car establishment, who ran out to the scene of the accident with him. Both testified that the car was bent in the middle and the rear tailgate was smashed.

John Duba, an estimator for the Company which repaired the deceased's truck, considered it "as a total car (wreck) beyond repairs". He testified that there was damage to the center of the truck, both front fen-

ders and the grill were smashed, and that there was damage to the tailgate and the rear cab. This clearly indicated that the vehicle had been struck violently by the vehicle behind, and thrown against the truck in front, which the driver of the Government vehicle claimed was not even there.

The Sergeant, who drove the car, and the corporal, Roy Lee Hammond, who occupied the front seat next to him, and whose depositions were offered in court by the Government, testified that the Army vehicle struck the other. We quote from Bailey's testimony:

"Q. Do you recall as you approached Bush Street as to whether or not there was a safety zone there? A. Yes, sir, there was.

"Q. As you approached Bush Street, did anything happen? A. Yes, plenty.

"Q. Will you state what happened, please? A. Well, *I hit the back of another vehicle.* Now I cannot give a definite description of it. It has been quite a while since then."

He also claimed that he never saw the truck ahead the deceased's vehicle, although admitting that he knew "the marks of Mr. Fotopulos' truck where he hit the other forward truck." He could not estimate the speed at which the deceased's truck was traveling, because, as he stated, *"I never saw the truck.* You cannot see much except from a side view of the car. *By that time he was* right in front of me." Further on in the deposition, he departed from the version he told and ended up with the statement from which the court could readily infer,—*as we can,* on reading the record,— that *he saw* little or nothing because he was not looking and failed to stop with the traffic, and that all he knew was that he had hit the truck. Again quoting from the record:

"Q. Then you did testify there was a truck there at the time this accident occurred, didn't you, Mr. Bailey? A. Yes.

"Q. Do you want to change that now? A. No.

"Q. Will you tell us where the truck was? Will you show it? A. *I do not know where it was. All I know is the* marks of Mr. Fotopulos' truck where he hit the other forward truck.

"Q. You want to leave it there was a car ahead of you, that Mr. Fotopulos hit the truck and you cannot tell us where the truck was? A. No. * * *

"Q. *I am asking you where the truck was when Mr. Fotopulos hit it after you hit Mr. Fotopulos, that is all I am asking you.* A. *That would only commit me. I do not know whether he hit the truck. He might have hit it before I hit him.*

"Q. You do not know what happened? A. *I do not know. I hit him, that is all I know.*

"Q. How is it you are so certain the right hand corner of your truck hit the left hand corner of the Fotopulos truck? Why are you so certain about that if you cannot remember anything else? Why do you remember that so distinctly? A. *That was my part of the accident. The other was not.*

"Q. That is the way you want to leave that? A. Yes, sir."

This lends support to the statement made by Failor that he admitted fault by claiming that "he couldn't help it" or "that the brakes wouldn't hold."

While he and the corporal testified that the Army truck struck the left rear corner of the deceased's truck, the contradiction in their testimony and the physical condition of the truck warranted inferences to the contrary.

■ And the trial court, having made them, any attempt on the part of the appellate court to "draw an inference of fact constitutes a 'usurpation of the province of the trial court'." And this "notwithstanding the fact that the evidence upon which the inference is founded is undisputed or without conflict". Hamilton v. Pacific Electric Ry. Co., 1939, 12 Cal.2d 598, 602-603, 86 P.2d 829, 831. And see, Juchert v. California Water Service Co., 1940, 16 Cal.2d 500, 507-508, 106 P.2d 886; State of California v. Day, 1946, 76 Cal.App.2d 536, 549, 173 P.2d 399; Webster v. Board of Dental Examiners, 1941, 17 Cal.2d 534, 539-540, 110, P.2d 992; and see, Grace Bros. v. Commissioner, 9 Cir., 1949, 173 F.2d 170,

173-174, 177-178; Western Union Telegraph Co. v. Bromberg, 9 Cir., 1944, 143 F.2d 288, 290-291.

## III.

### The California Law of Negligence

■ The basis for the Government's attack upon the findings as to negligence and contributory negligence is the contention that,—as the testimony of Bailey and Hammond is the only testimony in the record as to the movements of the two cars before the collision,—the trial court *was bound* to follow it. In addition to the contradictions already referred to, and others to be adverted to further on in the discussion, we point to the fact that the determination of these issues does not depend solely on the weight to be given to the findings of a trial judge under the Federal Rules of Civil Procedure, Rule 52, Federal Rules of Civil Procedure, but also on the substantive law of negligence as declared by the statutes and courts of California. So it is well to consider the state of the law on the subject in California, which governs the existence or nonexistence of negligence and determines the Government's liability. 28 U.S.C.A., § 1346(b). And see, State of Maryland to Use of Burkhardt v. United States, 4 Cir., 1947, 165 F.2d 869, 871, 1 A.L.R.2d 213; Olson v. United States, 8 Cir., 1949, 175 F.2d 510, 511.[1]

■ Under the law of California, the question of negligence is, ordinarily, one of fact for the determination of the trier of facts. And this is true, whether the inference of negligence is based on conflicting testimony or *is derived from undisputed facts from which inferences may be drawn.* See Wahlgren v. Market Street Railway Co., 1901, 132 Cal. 656, 663, 62 P. 308, 64 P. 993; Tuttle v. Crawford, 1936, 8 Cal.2d 126, 131-132, 63 P.2d 1128; Biondini v.

Amship Corp., 1947, 81 Cal.App.2d 751, 766, 185 P.2d 94.[2]

■ The same rule governs contributory negligence. Unless the reviewing court is able to say (1) that there was contributory negligence on the part of the plaintiff as a matter of law, and (2) that such negligence was a contributing factor to the accident, the question is one of fact. The following cases, chosen at random, show the continuity with which this principle has been applied: McAlpine v. Laydon, 1896, 115 Cal. 68, 46 P. 865; Schneider v. Market St. Railway Co., 1901, 134 Cal. 482, 485-486, 66 P. 734; Crawford v. Southern Pacific Co., 1935, 3 Cal.2d 427, 429, 45 P.2d 183; Arellano v. City of Burbank, 1939, 13 Cal.2d 248, 257, 89 P.2d 113; Thompson v. B. F. Goodrich Co., 1941, 48 Cal.App.2d 723, 727, 120 P.2d 693; Wright v. Sniffin, 1947, 80 Cal.App.2d 358, 181 P.2d 675; Blythe v. City and County of San Francisco, 1947, 83 Cal.App.2d 125, 128, 188 P.2d 40; Jacoby v. Johnson, 1948, 84 Cal.App.2d 271, 190 P.2d 243.

In Crawford v. Southern Pacific Co., supra, the Supreme Court of California, in laying down a rule for reviewing courts as to contributory negligence, used this warning language, which has been echoed many times since: "To establish the defense of contributory negligence as against the verdict of a jury, the evidence must be such that the appellate court can say that *there is no substantial conflict on the facts,* and that from the facts reasonable men can draw *but one inference,* which inference points unerringly to the negligence of the plaintiff proximately contributing to his own injury." (Emphasis added.) 3 Cal.2d at page 429, 45 P.2d at page 184.

The cases just cited illustrate the variety of circumstances under which these principles have been applied. Thus, in Thomp-

---

1. "This language (of section 1346(b)) clearly means that the standards and tests of local law are to determine whether a negligent or wrongful act has been established which is actionable and the nature and extent of the recovery permitted on account thereof". State of Maryland to Use of Burkhardt v. United States, supra, 165 F.2d at page 871.

2. This principle is recognized by the Supreme Court in Davidson Steamship Co. v. United States, 1907, 205 U.S. 187, 27 S.Ct. 480, 51 L.Ed. 764, which the case just cited quotes with approval,—as do other California cases, to be referred to further on.

son v. B. F. Goodrich, supra, the failure to see what was visible was not held determinative of the question of contributory negligence. Neither was the failure of a bicycle rider to *give a signal, which the court held she was clearly required to give.* See Wright v. Sniffin, supra.

The facts in the case just referred to fit perfectly into the situation which confronts us in this case. It was argued there (*just as it is argued here*) that because the testimony established that the rider of the bicycle *had failed to give a signal or any warning of her intention to cross the highway,* the jury was bound to draw an inference of contributory negligence. But the Court rejected this contention, saying: "In spite of the evidence of the defendants that Norma failed to give a left arm signal or any warning of her intention to cross the highway, plaintiff was entitled to the presumption that the deceased used care for her own safety (Code Civ.Proc., Sec. 1963, Subd. 4), which created a conflict of evidence regarding that subject." Wright v. Sniffin, supra, 80 Cal.App.2d at page 363, 181 P.2d at page 678.

The presumption that a person looks out for his own safety comes to the aid of the plaintiff. See 31 C.J.S., Evidence, § 135. This presumption thus rises to the dignity of evidence when, either because of the injuries suffered or because of death, the plaintiff cannot testify. Westberg v. Willde, 1939, 14 Cal.2d 360, 364–365, 94 P.2d 590; Douglas v. Hoff, 1947, 82 Cal.App.2d 82, 85, 185 P.2d 607. It creates a conflict with any evidence to the contrary. McKingley v. Southern Pacific Co., 1947, 80 Cal.App.2d 301, 313–314, 181 P.2d 899. And it is sufficient to support the verdict of a jury or the finding of a court *unless overcome by irrefutable evidence.* The Supreme Court of California in Mar Shee v. Maryland Assur. Corp., 1922, 190 Cal. 1, 9, 210 P. 269, 273, laid down this rule for determining whether evidence is of a character to overcome the presumption: "* * * a fact is proved as against a party when it is established by the uncontradicted testimony of the party himself or of his witnesses, under circumstances which

afford no indication that the testimony is the product of mistake or inadvertence; and that, when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case."

And see, Anthony v. Hobbie, 1945, 25 Cal. 2d 814, 819–820, 155 P.2d 826; McKinley v. Southern Pacific Co., supra.

This Court, in a case arising under the Federal Tort Claims Act, has taken the same attitude. In United States v. Uarte, 9 Cir., 1949, 175 F.2d 110, 111–112, attack was made upon the finding of negligence of the trial court upon the ground that only a truck driver and his wife were eyewitnesses and their testimony *did not* show negligence on the part of the driver of the Government car. But this Court found support for the trial court's finding in the inferences drawn from other facts in the case, saying:

"We cannot agree with the Government's view. It appears that certain aspects of the evidence and testimony did trouble the trial judge but this was natural since he was here confronted with a difficult task in appraising and weighing all of the facts disclosed in the evidence. The totality of these facts caused him to finally conclude that the negligence of the driver of the Government car was sufficiently established as the proximate cause of the accident. As he indicated, he was called upon to exercise judgment, from hearing the evidence and observing the witnesses, and we cannot say that the inferences he drew from the confusing and complicated array of facts are unreasonable or lack support in the record.

"Appellant advances three major reasons for reversal of the judgment: (1) The evidence does not support the judgment in view of the fact that only the truck driver (McCoy) and his wife were eye-witnesses; * * * We have already indicated our lack of agreement with the first of these contentions." See, Southern Pacific Co. v. Souza, 9 Cir., 1950, 179 F.2d 691, 693, 694.

In the case before us, there is evidence that the intersection is controlled, that another truck preceded the truck of the deceased to the intersection, with which it collided when struck by the Government

vehicle. The trial court was free to follow the presumption that the deceased did not move suddenly into another lane and cut in in front of the moving Government vehicle in violation of law. California Vehicle Code, Sec. 544. And, in view of the contradictions in the testimony of Bailey and Hammond, the trial judge was not bound to accept it as being,—in the language of the Supreme Court of California—"wholly irreconcilable with the presumption". Mar Shee v. Maryland Assur. Corp., supra, 190 Cal. at page 9, 210 P. at page 273. The California cases bid us not to interfere with such refusal. So they refused to disturb a finding of negligence, despite proof that the injured pedestrian crossed a street in the middle of the block. Jacoby v. Johnson, supra; and see, Anthony v. Hobbie, 1945, 25 Cal.2d 814, 818, 155 P.2d 826; Kirk v. Los Angeles Ry. Corp., 1945, 26 Cal.2d 833, 838, 161 P.2d 673, 164 A.L.R. 1; Pewitt v. Riley, 1945, 27 Cal.2d 310, 314–316, 163 P.2d 873. See also, Stephenson v. Grand Trunk Western Ry. Co., 7 Cir., 1940, 110 F.2d 401, 410, 132 A.L.R. 455.

The theory of these cases is that, unless the act or omission unequivocally establishes contributory negligence and causal connection with the accident, the question is one for the jury. As stated pithily in Wright v. Sniffin, supra, 80 Cal.App.2d at pages 362–363, 181 P.2d at page 677: "The questions of negligence and of contributory negligence, and as to whether such conduct or omissions contributed to or are *the cause of the accident* resulting in injuries or damage, are ordinarily problems for the determination of the jury." (Emphasis added.)

If these principles are applied to the facts in this case, we must sustain the findings. It is true that, as to the depositions of Bailey and Hammond, we may draw our own inferences. Johnson v. Griffiths S. S. Co., 9 Cir., 1945, 150 F.2d 224, 225. But the trial judge had other evidence before him. He was free, *as we are not,* to draw inferences *contrary* to the statements made by these two witnesses, from the testimony offered on behalf of the plaintiff as to Bailey's admission of fault, from the position of the vehicles at the time of collision, and from the physical damage done to the truck. To particularize further:

Bailey stated after the accident, "Well, my brakes didn't hold", or "I couldn't help it". From this, and the absence, at the time of the accident, of the explanation given *later,* in the deposition, that the deceased had cut in in front of him suddenly, the trial judge had the right to infer—as he did infer—that the later explanation may have been *an afterthought.* He was not required to accept the later statement that the witness and his companion never came near the truck. Failor placed the truck right behind the deceased's vehicle. As he put it, the Army truck was "directly behind it", "parked right behind it". So did McNeil. And Hammond saw the truck ahead of the deceased's truck in the East lane and the stop signal with the signal "Stop" in place.

The evidence as to the physical damage to the truck after the accident warranted an inference against a sudden cutting in, as the cause of the collision,—such as the absence of any damage to either of the rear fenders, the damage to the tailgate, which the witness Duba said was not greater at the left rear corner than at the right. This gave support to Failor's testimony that the Army truck was "directly behind" and that one was "exactly ahead of the other."

[14] In sum, even if the depositions of the two soldiers did not contain contradictions, the facts just adverted to were enough to discredit their story in the eyes of the trial court. And they are sufficient, under binding California law, to sustain the trial court's positive findings that the accident was caused solely by the negligence of the driver of the Army vehicle.

## IV.

### The Causal Connection Between the Accident and Death

The finding that the accident resulted in injury which culminated in the death of Fotopulos is, in like manner, supported by substantial testimony, both lay and expert. While the deceased did not complain of any injury at the time of the accident, it was made evident at the trial that the im-

pact of the collision threw him against the steering wheel. His wife testified to the deceased's complaints which followed the accident.

The surgeon who performed the operation, Dr. Russell C. Ryan, gave it as his opinion that "the original trauma on the 23rd of December was the proximate cause of the condition * * * found on operation and of his death." The family physician of the deceased, Dr. Morris Wirtheim, who was called by the appellant, while claiming that it was difficult to trace the perforation to the trauma, admitted on *direct* examination that "nobody could decide that it *was not* caused by the accident." By way of amplification, he added: "There is no other explanation, and we can't definitely say it is caused by the accident, but *we can't tell for sure that it is not caused by the accident.* We have nothing else sufficient to explain the hole perforation. The other explanations are not sufficient to say that it caused a perforation of his bowel. Therefore, we come back to the cause what we know, and maybe the accident was the cause. *We can't say it was definitely not the cause,* that it is impossible."

■ Another of the appellant's experts, Dr. Thomas F. Crahan, admitted that the injury could "conceivably" have been caused by trauma. Only one of their medical experts, Dr. Sidney Preston Cooper, ruled that cause out absolutely. He attributed death to diverticulitis. There is, thus, support for the Court's finding that the trauma began the series of events which resulted in Fotopulos' death, not only in the testimony of the surgeon who performed the operation, but also in the testimony of some of the appellant's experts.[3] The finding should not, therefore, be disturbed.

## V.

### Other Asserted Errors

■ No motion for a new trial was made. The trial court was not given the opportunity to consider the contention now made that the award is excessive. This is, ordinarily, a ground for new trial, which the trial court may grant outright or condition upon reduction of verdict: Rule 59, Federal Rules of Civil Procedure. See Stetson v. Stindt, 3 Cir., 1922, 279 F. 209, 23 A.L.R. 302; Northern Pacific R. Co. v. Herbert, 1886, 116 U.S. 642, 646, 6 S.Ct. 590, 29 L.Ed. 755; Arkansas Valley Land & Cattle Co. v. Mann, 1889, 130 U.S. 69, 9 S.Ct. 458, 32 L.Ed. 854; Dimmick v. Schiedt, 1935, 293 U.S. 274, 281–283, 55 S.Ct. 296, 79 L.Ed. 603, 95 A.L.R. 1150. Except under extraordinary circumstances, which do not obtain in this case, appellate courts will not review judgments for excessiveness or reduce them. See Smith v. Socony-Vacuum Oil Co., 2 Cir., 1938, 96 F.2d 98, 102; Herring v. Luckenbach S. S. Co., 2 Cir., 1943, 137 F.2d 598, 599; Southern Railway-Carolina Division v. Bennett, 1914, 233 U.S. 80, 87, 34 S.Ct. 566, 58 L.Ed. 860; Scott v. Baltimore & Ohio R. Co., 3 Cir., 1945, 151 F.2d 61, 65.[4]

■ The deceased was 49 years old at the time of the accident, was in good health and had a life expectancy of 23.36 years. He was in business for himself, being the owner of the P. F. Casing Company, a concern engaged in the treatment and sale of casings for meats. It was stipulated that the net earnings from his business were: 1943—$7,552.55; 1944—$12,262.56; 1945—

---

3. It should be observed that the testimony of these two medical witnesses was purely theoretical and was based on the clinical data supplied to them. The trial court was free to reject them in favor of the testimony of the surgeon who actually performed the operation and based his conclusions on what he found. 32 C.J.S., Evidence, § 572, pages 419–421; State of North Dakota v. Minnesota, 1923, 263 U.S. 365, 384–387, 44 S.Ct. 138, 68 L.Ed. 342; Sim v. Weeks, 1935, 7 Cal. App.2d 28, 35–36, 45 P.2d 350.

4. As said in Scott v. Baltimore & O. R. Co., supra, 151 F.2d at page 65: "A long list of cases in the federal courts demonstrates clearly that the federal appellate courts, including the Supreme Court, will not review a judgment for excessiveness of damages even in cases where the amount of damage is capable of much more precise ascertainment than it is in a personal injury case."

$15,195.92; 1946—$18,316.08, and that the widow had "no property or income separate and apart from her community interest". The widow was not able to carry on the business successfully after his death, and testified that she "lost it."

An award of damages to a widow and two small children for the loss of the head of the family with such expectancy, engaged in a successful business, with good earning capacity, is not so "outrageously excessive" as to call for interference by this court. See Arkansas Valley Land & Cattle Co. v. Mann, 1889, 130 U.S. 69, 74, 9 S.Ct. 458, 32 L.Ed. 854; Zarek v. Fredericks, 3 Cir., 1943, 138 F.2d 689, 691; Southern Pacific Co. v. Zehnle, 9 Cir., 1947, 163 F.2d 453; Hicks v. Ocean Shore Railroad, Inc., 1941, 18 Cal.2d 773, 783-785, 117 P.2d 850; Roedder v. Lindsley, 1946, 28 Cal.2d 820, 822-824, 172 P.2d 353.

 One other matter should be adverted to briefly. On cross-examination, the widow was asked the question: "Mrs. Fotopulos, Mr. Fotopulos had two accidents and sickness policies with Occidental Life Insurance Company?"

The Court sustained an objection to the question. There was no error in this. The limitation of cross-examination is peculiarly within the province of the trial court. Glasser v. United States, 1942, 315 U.S. 60, 83, 62 S.Ct. 457, 86 L.Ed. 680; Hider v. Gelbach, 4 Cir., 1943, 135 F.2d 693, 696; Chevillard v. United States, 9 Cir., 1946, 155 F.2d 929, 935; Anderson v. Federal Cartridge Corp., 8 Cir., 1946, 156 F.2d 681, 685. As the widow had not testified on direct examination about any other illnesses of the deceased, or to the condition of his health prior to the accident, but confined herself to describing his "complaints" after the accident which led to the hospitalization,—the question was not pertinent. See Insurance Company v. Mahone, 1874, 21 Wall. 152, at pages 154-155, 156, 22 L.Ed. 593; Chevillard v. United States, supra.

Assuming that, in a proper case, the trial court may consider other contributing factors in determining damages,—2 Wigmore on Evidence, 3rd ed., 1940, Sec. 225, —a death case like the present one in which medical experts traced the death to the injury, presented no occasion for an inquiry into matters relating to a possible apportionment of causation. And the Government offered no evidence, lay or expert, which would warrant the application of any such principle of apportionment.

 More, the existence of a pre-existing physical condition which may have made a person more susceptible to the type of injury which sprung from the negligent act, or which aggravated it, *does not* stand in the way of full recovery against the negligent actor. 15 Am.Jur., Damages, Secs. 80-81; 20 Am.Jur., Evidence, Sec. 262; 25 C.J.S., Damages, § 21, pages 479-480; Restatement, Torts, Sec. 461; Campbell v. Los Angeles Traction Co., 1902, 137 Cal. 565, 568-569, 70 P. 624; Smith v. Schumacker, 1938, 30 Cal.App.2d 251, 263, 85 P.2d 967; Matthews v. Atchison, T. & S. F. Ry., 1942, 54 Cal.App.2d 549, 559-560, 129 P.2d 435; Bacon v. Pullman Co., 5 Cir., 1908, 159 F. 1, 4-5, 16 L.R.A., N.S., 578, 14 Ann.Cas. 516; Oliver v. Yellow Cab Co., 7 Cir., 1938, 98 F.2d 192, 195.[5]

The judgment is affirmed.

DENMAN, Chief Judge.

I dissent. The court's opinion accepts as persuasive evidence of an admission of fault that Bailey said, "Well, my brakes didn't hold," *or* "I couldn't help it."

I dissent from establishing in the law of evidence for this circuit the probative value of such an "either-or" alternative. It is elementary that the adjudicating body cannot treat either alternative as proved.

However, even if both statements are proved, each is consistent with Bailey's statement that the Fotopulos car turned to its left across the army car. In such a

---

5. The rule is the same in compensation cases. See Colonial Ins. Co. v. Industrial Acc. Comm., 1948, 29 Cal.2d 79, 83-84, 172 P.2d 884; Lumbermen's Mut. Casualty Co. v. Industrial Acc. Comm., 1946, 29 Cal.2d 492, 493, 496-498, 175 P.2d 823; Pacific Employers' Ins. Co. v. Pillsbury, 9 Cir., 1932, 61 F.2d 101, 103; Harbor Marine Contracting Co. v. Lowe, 2 Cir., 1945, 152 F.2d 845.

situation one's brakes well could not "hold" efficiently for the quick stop required of Bailey's car and also because of the fault of the crossing car he "could not help" colliding with it.

In the absence of any admission of fault on Bailey's part, all the remaining evidence is consistent with the conclusion that Fotopulos' car contributed negligently to the collision.

The judgment should be reversed.