**PATRICK v. UNITED STATES et al.**
**No. 8784.**

United States District Court
S. D. California, Central Division.
May 5, 1950.

Gendel & Chichester, H. Miles Raskoff, Los Angeles, Cal., for plaintiff.

James M. Carter, U. S. Atty., Clyde C. Downing, Reuben Rosensweig, Max F. Deutz, Asst. U. S. Attys., Los Angeles, Cal., for defendants.

YANKWICH, District Judge.

The above-entitled cause, heretofore tried, argued and submitted, is now decided as follows:

Judgment will be for the plaintiff that she recover from the defendant, United States of America, the sum of $10,000.00 general

damages, and the sum of $912.00 special damages, or a total of $10,912.00, and her costs.

### Comment.

The action, instituted under the Federal Tort Claims Act, 28 U.S.C.A. § 931 [1948 Revised Judicial Code, 28 U.S.C.A. §§ 1346, 2671 et seq.], presents purely a question of fact.

The evidence in the case consists of the testimony of witnesses produced by the plaintiff. The Government offered no other testimony, but relied only upon the additional facts elicited by cross examination and the inferences which they draw from these facts.

The plaintiff is the widow of J. E. Patrick, to whom she was married on August 22, 1946. She is his sole dependent. The deceased's surviving mother, Nora Patrick, has waived any right of recovery in this action and any interest in the estate.

While J. E. Patrick was a civilian employee of the United States Navy, working as a welder at the Navy Yard at Port Hueneme, in Ventura County, California he met his death on March 17, 1948. The exact cause of his death does not appear directly in the record. It is evident, however, that it was the result of an explosion which occurred on March 16, 1948, when the deceased applied his welding torch to a definite place on a tractor or craft known as an "LVT".

Recovery in a case of this nature depends upon proof of negligence. And the sole question before us is whether the injury and consequent death were the result of negligence on the part of the employees of the Government. (28 U.S.C.A., sec. 1346 (b); State of Maryland, to use of Burkhardt, v. United States, 4 Cir., 1947, 165 F.2d 869, 871, 1 A.L.R.2d 213; United States v. Fotopulos, 9 Cir., 1949, 180 F.2d 631, 636.) A study of the case leads to the conclusion that they were. It appears that the "LVT" contained a sealed compartment, the existence of which was unknown to the deceased and to the other employees of the Navy, who were in charge of the craft and inspected it prior to beginning work on it. The evidence shows that two days before, an inspection had been made of a similar craft and following it, the work of welding and dismantling had been completed without any untoward incident. A similar inspection was made on the craft in question, which consisted of an examination of some twenty spots on the craft with an explosimeter. The object of the inspection, by such means, was to ascertain the existence of any escaping gases or fumes which might, through combustion, create hazards by explosion or other ways.

The inspection disclosed no escaping gases or fumes, nor were any discernible to the sense of smell at the time or when the work began. But the *inspection did not extend to the sealed, unvented tank,* which, *being a vacuum, constituted a danger.* The testimony of the Government employees is that had any of the persons connected with the welding operation known of the existence of this sealed tank, they would not have attempted any welding operations without an interior inspection of the tank, which could have been easily made by removing the safety plates provided for the purpose. This for the reason that those engaged in this occupation consider a sealed compartment a dangerous spot.

The Government employees who made the inspection were not given any description of the craft. Such description and blue prints were in the possession of higher authorities, whose duty it was to *inform those actually making the inspection* of the existence of this vacuum area, which presented a danger.

The inspection which they made with the explosimeter *showed only that the exterior of the craft was safe.* But *danger lurked in the sealed compartment,* the existence of which was unknown to the deceased and to those whose duty it was to inspect and assure his safety. *As to it, no safety measures were* taken, to *insure against explosions of gases or fumes* which might *have seeped into the compartment.*

While no direct evidence exists to show what actually caused the explosion, a safe inference from the evidence is that the sealed compartment contained gasoline fumes which had leaked into it, and which

caused the explosion when they came in contact with the welder's torch. Their presence could have been detected and disclosed by the simple process of removing the safety plates, and applying to the area the explosimeter or through other known means of detecting explosive substances.

The failure to do so is negligence which proximately brought on the death of the deceased, and for which the sole responsibility rests upon the Government.

■ The plaintiff is, therefore, entitled to recover. And, while the value of human life is difficult to estimate, we believe, in view of the circumstances in the case, the ages of the parties,' the duration of their marital relationship, that the sum designated above as general damages will compensate the plaintiff for the loss of support and companionship and the other detriments, which, under the law of California, must be taken into consideration in determining damages in cases of this character. See, Holder v. Key System, 1948, 88 Cal.App. 2d 925, 200 P.2d 98. To this has been added the sum actually incurred in funeral expenses.

Hence the ruling above made.

Findings and Judgment to be prepared by counsel for the plaintiff under Local Rule 7.